18-3031-JWL



FILED

FEB 13 2018

Clerk, U.S. District Court
By: _____ Deputy Clerk

To/.

us District court clerk,
444 se Quincy st # 490.
Topeka ks 66683

Subject # ARRANGE me free LAWYER FACILITY to APPEAL
in District court For my release.

Respected sir/madham,

I am AMANDEEP SINGH whose under
Detention at chase county Detention center, 301 walnut
(Po Box#639) cottonwood falls, ks 66845 from 24 months.
I had APPEALED for my relief in the
court and Respected immigration judge Glen R. Baker
Denied all my APPEALs (Request). my father Hardeep
singh was operated with open heart surgery Before
6 months ago, After That he was gone to comma
and still now he is in some heath condition at
Hospital in california. so Please Arrange me free
Lawyer Facility to APPeal in District court For
my release. I would Be much Appreciated.

Thank you very much,

Sincerely,

Amandeep Singh

SINGH AMANDEEP.

A# 078-155-083.

Dated # 02/13/2018.

Chase county Detention Center

fax NO# 620-273-7076



Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

SINGH, AMANDEEP
A078-155-083
C/O DHS-ICE CUSTODY
CHASE COUNTY DETENTION CENTER
301 WALNUT (PO BOX 639)
COTTONWOOD FALL, KS 66845

DHS/ICE Office of Chief Counsel - KAN
2345 Grand Blvd., Suite 500
Kansas City, MO 64108

Name: SINGH, AMANDEEP                    A 078-155-083

Date of this notice: 1/22/2018

Enclosed is a copy of the Board's decision in the above-referenced case. If the attached
decision orders that you be removed from the United States or affirms an Immigration Judge's
decision ordering that you be removed, any petition for review of the attached decision must
be filed with and received by the appropriate court of appeals within 30 days of the date of
this decision.

Sincerely,

Donna Carr

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Mann, Ana

Sharon:M
Userteam: Docket

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

File:  A078 155 083 – Kansas City, MO

Date:  **JAN 2 2 2018**

In re: Amandeep SINGH a.k.a. Singh Mankeet

IN ASYLUM AND/OR WITHHOLDING PROCEEDINGS

APPEAL

ON BEHALF OF APPLICANT: Pro se

ON BEHALF OF DHS:   Kimberly A. Burgess
                    Assistant Chief Counsel

APPLICATION:   Withholding of removal; Convention Against Torture

The applicant, a native and citizen of India, appeals the decision of the Immigration Judge, dated August 17, 2017, denying his applications for withholding of removal to India under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3) (2018), and for protection under the Convention Against Torture, 8 C.F.R. § 1208.16(c) (2018). The applicant's appeal, which is opposed by the Department of Homeland Security, will be dismissed.

We review Immigration Judges' findings of fact for clear error. 8 C.F.R. § 1003.1(d)(3)(i). We review questions of law, discretion, and judgment, and all other issues in appeals de novo. 8 C.F.R. § 1003.1(d)(3)(ii).

We affirm the Immigration Judge's decision. On appeal, the applicant argues that the "Immigration Judge erred in finding" he "did not testify credibly." However, he has not identified the alleged deficiency in the Immigration Judge's decision that led to the erroneous adverse credibility finding. Furthermore, the applicant has made no meaningful argument that, absent credible testimony, the evidence in the record supports an application for withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. § 1231(b)(3), or protection under the Convention Against Torture (IJ at 3-11). Upon review of the record, we conclude that the Immigration Judge's findings of fact are not clearly erroneous. Based on those findings of fact, we adopt and affirm, upon de novo review, the Immigration Judge's conclusion that the applicant did not meet his burden of proof for withholding of removal to India, or protection under the Convention Against Torture (IJ at 3-11). As we decline to disturb the Immigration Judge's decision, the following order is entered.

ORDER: The applicant's appeal is dismissed.

FOR THE BOARD



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

SINGH, AMANDEEP
A078-155-083
C/O DHS/ICE/CHASE COUNTY DET. CTR
301 WALNUT (PO BOX 639)
COTTONWOOD FALL, KS 66845

DHS/ICE Office of Chief Counsel - KAN
2345 Grand Blvd., Suite 500
Kansas City, MO 64108

Name: SINGH, AMANDEEP                    A 078-155-083

Date of this notice: 1/23/2017

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being
provided to you as a courtesy. Your attorney or representative has been served with this
decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be
removed from the United States or affirms an Immigration Judge's decision ordering that you
be removed, any petition for review of the attached decision must be filed with and received
by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
O'Connor, Blair
Mann, Ana
Adkins-Blanch, Charles K.

bashorea
Userteam: Docket

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 20530

Decision of the Board of Immigration Appeals

File:   A078 155 083 – Kansas City, MO

Date:

JAN 2 3 2017

In re: AMANDEEP SINGH

IN ASYLUM AND/OR WITHHOLDING ONLY PROCEEDINGS

APPEAL

ON BEHALF OF APPLICANT: Samuel Ouya Maina, Esquire

ON BEHALF OF DHS:   Trisha Lacey
                    Assistant Chief Counsel

APPLICATION:  Withholding of removal; Convention Against Torture

The applicant, a native and citizen of India, appeals the decision of the Immigration Judge, dated August 11, 2016, denying his applications for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3), and for protection under the Convention Against Torture ("CAT"). The Department of Homeland Security has filed a motion for summary affirmance. The record will be remanded.

We review Immigration Judges' findings of fact for clear error, but questions of law, discretion, and judgment, and all other issues in appeals, de novo. 8 C.F.R. § 1003.1(d)(3)(i), (ii).

Under the totality of circumstances, we conclude that a remand is warranted. A contested issue on appeal is the question of whether the applicant presented sufficient corroborating evidence to satisfy his burden of proving his eligibility for withholding of removal and protection under the CAT (I.J. at 6-8). See section 240(c)(4)(B) of the Act; see also Matter of S-M-J-, 21 I&N Dec. 722 (BIA 1997) (in a pre-REAL ID matter, holding that, where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided or an explanation should be given as to why such information was not presented). The amount and quality of corroborating evidence that should be submitted varies with respect to the findings of fact made by the Immigration Judge regarding the specificity and/or credibility of the applicant's testimony. See, e.g. Omondi v. Holder, 674 F.3d 793, 798-99 (8th Cir. 2012). Taking into consideration the evidence of record before us, to include the Immigration Judge's decision and the parties' arguments on appeal, we conclude that a remand is warranted for more detailed findings of fact by the Immigration Judge, to include specific findings of fact with respect to the authenticity and truthfulness of any significant corroborating documents submitted by the applicant.[1]

---

[1] In this regard, we note that the delayed submission of original documents by the applicant after previously having submitted copies does not automatically call into question the legitimacy of the originals, and that there is no requirement that an applicant have personal knowledge of the contents of country reports in order for them to be considered. Furthermore, we find that the

A078 155 083

Upon remand, the Immigration Judge may hold further hearings, if necessary, to allow the parties to present further evidence. We note that, if the Immigration Judge determines that the applicant established past persecution in India, there is a rebuttable presumption of future persecution in that country, and that the government bears the burden of establishing that it would be reasonable for the applicant to internally relocate in India to an area where he could avoid future persecution.

Accordingly, the following order is entered.

ORDER:   The record is remanded for further proceedings and the entry of a new order.

_____
FOR THE BOARD

Board Member Ana Mann respectfully dissents without opinion.

applicant should be afforded an opportunity to explain why the affidavits from his parents and the friends of his father are in English instead of Punjabi.

2

19.

# AMANDEEP SINGH

## A078 155 083

My name is Amandeep Singh s/o Hardeep Singh. I am a Sikh by birth; believe in justice and equality to all. As learned in my childhood to stand up for truth from religious scriptures. I joined a democratic& political party Shromani Akali Dal Amritsar AKA Shromani Akali Dal Mann in 2014. Because this party struggles for the basic rights of Sikhs. I was beaten and threatened in my home country because of my political and religious beliefs, works and association with this party. So I left India and came to USA and applied for political asylum.

I joined this party in May, 2014. As a member of this party I used to help poor people, help poor girls during marriage ceremonies by helping in arrangements, preach Sikhism to youth and children, and also help in the "quit drugs" camps.

On October 17, 2015 our party organized a wedding ceremony for poor girls in our local Gurdwara ( A religious Place). I was helping in the arrangements and making sure everything is there as organized by our party. I was coming back after finishing my work when 5 people stopped me. I recognized them as BJP (Bhartiya Janta Party/ Ruling party in India) workers as I saw them working with BJP during election campaign. They told me to stop working for Shromani Akali Dal Mann party and asked me be part of selling illegal drugs to make money. They told me that they would provide all the privileges in return. I refused their proposal and said that I would not quit my party and refused to be part of their drug business proposal. After hearing this they started slapping, punching and beating me. While beating they were telling me to listen to them and quit my political party. I suffered from internal injuries especially in my back and ribs after the beating.

After this incident, I went to police station to report. I gave their names and also told that these people belonged to BJP. But no one paid attention to my report. First they had me sit there and them told me to take my report back. They told me that the BJP and Badal was active government that time so it was not good to file charges against them. When I said that it was not right as these people beat me so there should be a report. But instead of filing my report I was threatened to be put in jail under drugs case if I wouldn't leave from the station.

On December 20, 2015 I was putting up posters of my party in nearby villages in Jalandhar regarding the illegal drug awareness rally on 25th December, when 5 people attacked me from back with baseball bat. One of them hit me in the back and I fell down. I was only able to recognize one of them but they were all BJP party workers. When I fell down all 5 of them started beating me. They all had bats in their hands. They hit me on my back, hips, and legs. While beating they were saying that I did not follow their direction and quit the Mann party so they would kill me. I was crying with pain but they did not pay any attention to my crying and continued beating. I got unconscious with beating and pain so they left me there considering me dead.

The passerby stopped and helped me to get my home. I had bruises and swelling because of the beatings. I got treatment from village doctor.

After this incident, my mom got worried about my life. I had a threat to my life and even the police were not helping and providing any security. So I left the country to save my life. An agent helped to make the arrangements for my travel and I arrived here in USA. I crossed the border near Calexico on 2/13/2016. I request you to grant me the permission to stay here and

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**KANSAS CITY, MISSOURI**

File Numbers: A078-155-083

Dated: 8/17/17

| | |
|---|---|
| In the Matters of: | ) |
| | ) |
| **AMANDEEP SINGH** | ) |
| | ) |
| | ) **In Withholding Only Proceedings** |
| Respondent. | ) |
| | ) |

**Applications:** Withholding of Removal under INA § 241(b)(3) and Relief under the Convention Against Torture (CAT).

**ON BEHALF OF RESPONDENT:**
Samuel Ouya Maina, Esq.
Law Offices of S. Ouya Maina, PC
2140 Shattuck Ave., Suite 1110
Berkeley, CA 94704

**ON BEHALF OF DHS:**
Trisha Lacey, Asst. Chief Counsel
DHS-ICE-OCC
2345 Grand Boulevard, Suite 500
Kansas City, MO 64108

~~**WRITTEN DECISION OF THE IMMIGRATION JUDGE**~~

### A.   Background

The respondent is a 37-year-old male who is a native and citizen of India. On or about February 13, 2016, he entered the United States without inspection at or near Calexico, California. *See* Notice of Referral to Immigration Judge. Exhibit (Exh) 1. The Department of Homeland Security (DHS) commenced removal proceedings against the respondent on April 13, 2016. *Id.* DHS brought these proceedings pursuant to section 241(a)(5) of the INA by reinstating the respondent's previous removal order, which the government issued on April 8, 2001. *See* Notice and Order of Expedited Removal (Form I-860), Apr. 8, 2001.

On August 8, 2016, the respondent filed a Form I-589 (Exh 4 at 1-10), applications for withholding of removal under INA section 241(b)(3) and protection under the CAT, 8 C.F.R.

section 1208.16(c). On August 11, 2016, the Court held an individual hearing on the merits of his applications.

At his merits hearing, the Court entered an oral decision denying the respondent's applications for withholding of removal and protection under the CAT. *See* Oral Decision and Order of the Immigration Judge, Aug. 11, 2016. The Court found that the respondent failed to show that he suffered past persecution or would likely suffer future persecution in India. *Id.* The Court emphasized that the respondent's corroborating evidence lacked credibility and consequently, weighed against the veracity of his claim for relief. *See id.* The respondent timely appealed the Court's decision.

On January 23, 2017, the Board of Immigration Appeals (the Board or BIA) issued an order remanding the respondent's case. *See* Decision of the Board of Immigration Appeals, Jan. 23, 2017. The BIA remanded the case for the Court to render more detailed findings of facts, including specific findings of fact with respect to the authenticity and truthfulness of any significant corroborating documents submitted by the respondent. *Id.* at 1. Upon remand, the Board gave the Court the opportunity to hold further hearings and it allowed both parties to submit further evidence if necessary. *Id.* at 2. As a result, the respondent submitted additional documents to resolve the credibility and authenticity issues surrounding the initial documentary evidence that he filed in support of his Form I-589. *See* Respondent's Documents in Support of Case (pp. 1-19), May 8, 2017.[1] In response, DHS submitted documentation in support of its position that the respondent lacks credibility and that his applications for relief should be denied. *See* Department's Submission of Position and Forensic Document Lab Results, Jun. 9, 2017.

**B.    Evidence**

**A.  Testimony**

No new testimony was entered into the record on remand, and the Court incorporates its summary of the respondent's testimony from its oral decision issued on August 11, 2016. *See* Oral Decision and Order of the Immigration Judge, August 11, 2016.

**B.  Documentation**

Ex. 1:  Notice of Referral to Immigration Judge, filed April 18, 2016.

---

[1] On or about May 5, 2017, the respondent filed the same documents. But he refiled the documents on May 8, 2017 because better reproductions became available.

Ex. 2:  DHS's submission of the Department of State (DOS) Human Rights Report for India 2015 (pp. 1-67)

Ex. 3:  DHS's Notice of Filing Documents (pp. 68-163)

Ex. 4:  Respondent's Form I-589 (pp. 1-10) and supporting documents (pp. 11-95)[2]

Ex. 5:  Form I-867A, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the INA

## C.   Analysis and Findings of Law

### A. Credibility

The Court finds that the respondent lacked credibility. In all applications for asylum and withholding of removal, the Court must make a threshold credibility finding. *See Matter of O-D-*, 21 I&N Dec. 1079, 1081 (BIA 1998). An adverse credibility finding must be supported by "specific and cogent" reasons that have a legitimate nexus to the finding in the case. *See Matter of A-S-*, 21 I&N 1106, 1109-10 (BIA 1998). "[B]ecause the [Immigration Judge] is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight." *Esaka v. Ashcroft*, 397 F.3d 1105, 1109 (8th Cir. 2005) (citing *Perinpanathan v. I.N.S.*, 310 F.3d 594, 597 (8th Cir. 2002)). The following factors, taking into consideration the "totality of the circumstances," may be considered in the assessment of an applicant's credibility: demeanor, candor, responsiveness of the applicant, the inherent plausibility of the claim, the consistency between oral and written statements, the consistency of such statements with evidence of record, and any inaccuracy or falsehoods in such statements, even if those inaccuracies or falsehoods are not centrally related to the applicant's claim. INA § 208(b)(1)(B)(iii).

In this case, the respondent provided inconsistent testimony at his merits hearing. More specifically, the documents presented by the respondent contradicted his testimony and failed to corroborate elements of his claim. While minor and isolated discrepancies in the applicant's testimony are not necessarily fatal to credibility, omission of key events coupled with numerous inconsistencies may lead to a finding that the applicant is not credible. *See A-S-*, 21 I&N Dec. at 1109-10. Although lack of corroborative evidence is not necessarily fatal to an asylum application, if an Immigration Judge or other trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the

---

[2] As previously mentioned, the respondent's Form I-589 includes applications for withholding of removal and protection under the CAT. He did not submit an application for asylum under INA section 208.

Decision – A078-155-083                         3

applicant does not have the evidence and cannot reasonably obtain it. INA § 208(b)(1)(B)(ii). If such evidence is unavailable, the applicant must explain its unavailability. *See Matter of S-M-J*, 21 I&N Dec. 722, 724-26 (BIA 1997). For the reasons discussed below, the Court finds that the respondent was not credible.

First, the respondent presented a series of newspapers articles as evidence of country conditions in India. Exh 4 at p. 48-95. But he did not provide the original versions of any of the articles. Instead, the respondent presented photocopy versions that contain little to no identifying information. For instance, the photocopies do not include the names or publishing dates for several of the articles. In fact, some of the articles are completely illegible. *Id.* at p. 48, 69. Moreover, the respondent did not explain how the newspaper articles relate to his claim. When asked about the articles, he conceded that he never saw any of them and that he was unfamiliar with their contents.

Second, on remand, the respondent submitted four affidavits from family and friends who live in India and a letter from Singh Kazampur, the Vice President of his political party. *See* Respondent's Documents in Support of Case at p. 1-16. Additionally, he presented a letter and a receipt of purchase from Sialkot Enterprises, a sporting goods store in India. *Id.* at p. 17-19. All of these evidentiary items allegedly came from India, but the record fails to demonstrate the chain of custody for any of the documents. The respondent did not present any evidence showing how he received the items. For instance, he did not submit the mailing envelopes for any of the documents. Further, the record contains both Punjabi and English versions of the four affidavits. *Id.* at p. 1-15. But the English versions lack certified translations. Moreover, the letter from the Indian sporting goods store does not include a sworn statement affirming its contents. *Id.* at p. 17.

Third, the record contains two affidavits from the respondent's mother. The first was submitted with the respondent's I-589 application and the second was submitted on remand. Although his mother's affidavits discuss the same incidents, they tell different stories. In her first affidavit, she wrote that five people attacked the respondent on October 17, 2015. Exh 4 at p. 20. She stated that the respondent recognized his attackers as people who worked for the BJP party. *Id.* His mother explained that the respondent suffered internal injuries, particularly to his back and ribs, as a result of the incident. *Id.* Further, when discussing the December 20, 2017 incident, she wrote that five people attacked the respondent when he was putting up posters for his political party. *Id.* In contrast, in her second affidavit, the respondent's mother wrote that her son was attacked in October 2015 by members of the Shiromani Akali Dal and BJP political parties. *See*

Respondent's Documents in Support of Case at p. 1-2. Also, she never mentioned that the respondent incurred any injuries as a result of the October 2015 incident. Moreover, her second affidavit indicates that the respondent was attacked by a few people when he was handing out pamphlets for his political party on December 17, 2015. *Id.* at p. 2. She continued that her husband's brother-in-law, Jagjit Singh, reached out to their family after the incident. *Id.* Thus, the respondent's mother's second affidavit contains facts about the October and December 2015 incidents that are inconsistent with her first affidavit.

Her affidavits are also inconsistent with the respondent's testimony about the October and December 2015 incidents. The respondent testified that the same five people beat him up on both occasions. He explained that all five of his attackers belonged to the BJP party. The respondent identified one of them as the BJP's local party leader, Ravi Paul. Further, the respondent mentioned that he was putting up posters for his political party when they attacked him during the December 2015 incident. To the contrary, his mother's second affidavit indicates that he was handing out political pamphlets when he was attacked during the December 2015 incident. *Id.* at p. 2. Additionally, the affidavits from the respondent's mother fail to indicate that he was attacked by the same five persons in October and December 2015. In fact, his mother's second affidavit suggests that some of the people who attacked the respondent in December 2015 belonged to the Shiromani Akal Dal party. *Id.* Also, her second affidavit fails to reflect that the respondent was ~~attacked by five persons during the December 2015 incident. Rather, she wrote that a few persons~~ attacked him. *Id.* Thus, the respondent's mother's affidavits do not corroborate key aspects of the respondent's testimony about the incidents.

Fourth, the record includes two affidavits from Charan Singh, a friend of the respondent's father. Nonetheless, his second affidavit contains information that is inconsistent with his first affidavit. In his second affidavit, Mr. Singh wrote that five people attacked the respondent in December 2015 when he was distributing pamphlets for his political party. *See* Respondent's Documents in Support of Case at p. 6. He explained that the attackers were members of the Akali Dal Badal and the BJP political parties. *Id.* Mr. Singh continued that the respondent's mother called him after the incident to tell him about what happened. *Id.* In contrast, in his first affidavit, Mr. Singh wrote that five people attacked the respondent in December 2015 when he was putting up political posters. Exh 4 at p. 26. He never mentioned that any of the respondent's attackers belonged to the Akali Dal Badal party. Instead, Mr. Singh wrote that the attackers were BJP

workers. *Id.* at p. 27. Further, he never stated that the respondent's mother contacted him after the incident. Also, Mr. Singh's first affidavit fails to indicate that he knew about the October 2015 incident.

Similarly, Mr. Singh's second affidavit is inconsistent with the respondent's testimony. For instance, he wrote that people attacked the respondent in December 2015 when he was passing out political pamphlets. *See* Respondent's Documents in Support of Case at p. 6. But the respondent stated that people attacked him in December 2015 when he was putting up political posters. It should be noted that Mr. Singh's second affidavit is inconsistent with the respondent's mother's affidavits. For example, Mr. Singh mentioned that the respondent's mother contacted him after the December 2015 incident and that they reported it to the police. *Id.* at p. 6. However, neither of the respondent's mother's affidavits mention that she contacted Charan Singh after the December 2015 incident. Rather, her affidavits indicate that she called a family friend named Prem Singh after the incident. *Id.* at p. 3; Exh 4 at p. 21.

Fifth, the record contains two affidavits from Prem Singh, another friend of the respondent's father. In his second affidavit, Prem Singh wrote that a few people attacked the respondent in December 2015 when he was handing out political pamphlets. *See* Respondent's Documents in Support of Case at p. 13. He continued that the respondent identified one of his attackers as a member of the BJP party. *Id.* In contrast, when describing the December 2015 incident in his first affidavit, Prem Singh wrote that five people attacked the respondent when he was putting up political posters. Exh 4 at p. 31. He stated that all of the respondent's attackers were BJP workers. *Id.* at p. 32. This shows that Prem Singh's second affidavit contains information about the December 2015 incident that is inconsistent with his first affidavit. His second affidavit is also inconsistent with the respondent's testimony about the December 2015 incident. For instance, the respondent testified that five people attacked him when he was putting up political posters rather than when he was distributing political handouts. *See* Respondent's Documents in Support of Case at p. 13.

Sixth, the record contains three letters from the Shiromani Akali Dal Amritsar, the respondent's political party. The respondent submitted two of the letters with his I-589 application and the third letter on remand. The first letter is signed by the President of his political party, Sardar Simranjit Singh Mann. Exh 4 at p. 37-47. It contains generalized information about the party and the persecution that its members have faced in the past. *Id.* The letter fails to include any

personalized information about the respondent aside from his name. For instance, it never mentions the October or December 2015 incidents. Similarly, the second letter from the respondent's political party does not include any information specifically relating to the respondent. *Id.* at p: 49-50. The letter outlines human rights violations committed against the party's members in general. *Id.* Also, it is signed by the President of the respondent's political party. *Id.* at p. 50. Although the first and second letters are signed by the same persons, they contain physical signatures that look dramatically different.

The third letter from the respondent's political party is signed by the party's Vice President, Sukhjinder Singh Kazampur. *See* Respondent's Documents in Support of Case at p. 16. The letter mentions that people beat up the respondent when he was putting up posters for the party. *Id.* But it fails to indicate when the incident happened. Also, the letter states that the people who beat him up belonged to the Shiromani Akali Dal Badal and the BJP political parties. *Id.* This contradicts the respondent's testimony that all five of his attackers were members of the BJP. Moreover, there is no evidence verifying the chain of custody for the three letters. For instance, the respondent did not submit the original envelopes for any of the letters. Additionally, each letter is written in English. The record does not contain versions of the letters written in any other languages even though they were allegedly drafted in India.

Seventh, the respondent testified about an incident where individuals attacked him with baseball bats. When asked, he affirmed that baseball bats are available for purchase in India even though baseball is not a popular sport there. On remand, the respondent submitted a letter and receipt of purchase from an Indian sporting goods store. *Id.* at p. 17-19. The receipt lists the respondent's name and it indicates that he purchased a baseball bat from the store. *Id.* at p. 18. The respondent also presented a picture showing two baseballs bats aligned next to the receipt. *Id.* at p. 19. However, he did not submit any evidence authenticating the letter or the receipt. As previously discussed, the letter from the store does not include a sworn statement confirming the truth of its contents. It has a stamp indicating that a partner for the store signed the document, but the physical signature is illegible. *Id.* at p. 17. Additionally, there is nothing verifying that the baseball bats in the picture submitted by the respondent were purchased at the Sialkot Enterprises sporting goods store in India. *Id.* at p. 18-19.

Even if the letter and the receipt of purchase from the sporting goods store are authentic, they do not directly relate to the elements of the respondent's claim. For instance, the documents

may corroborate the respondent's testimony that baseball bats are sold in India. But they do not prove that people hit the respondent with baseball bats when he resided in the country. Moreover, there is nothing in the record suggesting that any person who attacked the respondent purchased a baseball bat from Samrat Sports Industries or Sialkot Enterprises. *Id.* at 17-19.

Lastly, the record reflects that the respondent made willful misrepresentations when attempting to gain entry into the United States. In 2001, the respondent attempted to enter the country by applying for a C1/D employment visa. Exh 5 at p. 2. To support his visa application, he presented a fraudulent employment letter and a counterfeit seaman book suggesting that he was coming to the United States to work on a vessel. *Id.* The record contains a sworn statement made by the respondent affirming that he knowingly committed fraud for the purposes of procuring an immigration benefit. Exh 5. At his merits hearing, the respondent admitted again to the unlawful conduct. The respondent's previous misrepresentations weigh significantly against the credibility of his testimony. *See Ali v. Holder*, 686 F.3d 534 (8th Cir. 2012) (affirming an Immigration Judge's adverse credibility finding where the applicant made willful misrepresentations on his immigration papers to gain entry into the United States).

The Court may properly base a credibility finding on a lack of corroborating evidence where it also encounters inconsistent testimony or contradictory evidence. *See Esaka v. Ashcroft*, 397 F.3d 1105, 1110 (8th Cir. 2005) Where it is reasonable to expect corroborating evidence for certain specific elements of an applicant's claim, such evidence should be provided. *See Matter of S-M-J-*, 21 I&N Dec. at 725-26. If the Court encounters inconsistencies in the testimony, contradictory evidence, or inherently improbable testimony, the absence of corroboration can lead to a finding that an applicant has failed to meet his or her burden of proof. *See Rucu-Roberti v. INS*, 177 F.3d 669, 670 (8th Cir. 1999) (indicating that when an applicant makes implausible allegations and fails to present corroborating evidence, an adverse credibility determination may be warranted). For the specific reasons discussed above, the Court finds that the respondent did not testify credibly in support of his applications for relief.

**B.  Withholding of Removal**

Even if the respondent provided credible testimony, the Court would deny his application for withholding of removal. An applicant must establish that there is a "clear probability" that his life or freedom would be threatened on account of the applicant's race, religion, nationality, membership in a particular social group, or political opinion. *See INA* § 241(b)(3)(C); *Antonio-*

Decision – A078-155-083                                    8

*Fuentes v. Holder*, 764 F.3d 902, 904 (8th Cir. 2014). In other words, withholding of removal will be granted only if an applicant proves that it is more likely than not that he would be persecuted upon return to the applicant's country. *Goswell-Renner v. Holder*, 762 F.3d 696, 700 (8th Cir. 2014).

An alien may satisfy the burden of proof for withholding of removal in two ways. First, the applicant may show that the applicant has suffered past persecution in the proposed country of removal on account of one of the five above-listed protected grounds. *See* 8 C.F.R. § 1208.16(b)(1). Second, the applicant may establish that he would more likely than not be persecuted in the future on account of a protected ground if he returned to the country of removal. *See* 8 C.F.R. § 1208.16(b)(2). But if the applicant could avoid the threatened danger by relocating to another part of the country, then withholding of removal is unwarranted. 8 C.F.R. § 1208.16(b)(2). In this case, the respondent did not meet his requisite burden of proof for withholding of removal.

First, the respondent contended that he suffered past persecution on account of his religion and political opinion in India. He testified about two incidents where five members of an opposing political party beat him up. The INA does not define persecution to include "all treatment that society regards as unfair, unjust, or even unlawful or unconstitutional." *Matter of V-T-S-*, 21 I&N Dec. 792, 798 (BIA 1997). For instance, minor beatings or limited detentions do not usually rise to the level of past persecution. *Bhosale v. Mukasey*, 549 F.3d 732, 735 (8th Cir. 2008). The respondent testified that the individuals slapped him and hit him with their fists. During one of the incidents, they hit him with baseball bats and knocked him unconscious. Although the record shows that the respondent endured physical harm, it fails to suggest that he sustained any serious injuries as a result. *See Tawm v. Ashcroft*, 363 F.3d 740, 743 (8th Cir.2004) (holding that "the mere presence of some physical harm does not require a finding of past persecution"). Further, the record reflects that the respondent received medication for pain and swelling after the incident where he was knocked unconscious. There is nothing suggesting that he required any additional or more extensive medical treatment or assistance.

Second, the record reflects that the respondent could avoid future harm by relocating to another part of India. *See* 8 C.F.R. § 1208.16(b)(2). Both incidents where the respondent was harmed by BJP members happened in Punjab, India. There is no evidence suggesting that the BJP members who mistreated the respondent would travel outside of Punjab to search for him. Further,

Decision – A078-155-083                                    9

the record lacks any evidence demonstrating widespread persecution of Sikhs in India. The documentary indicates that Sikhs reside across India and that they are generally not targeted for harm in other parts of India outside of Punjab. Exh 3 at p. 30. Additionally, the respondent speaks both Punjabi and Hindu. Hindu is India's "most widely spoken language" and it is the "primary tongue" of 41% of the country's population. *Id.* at p. 94. Thus, it would not be unreasonable for the respondent to relocate to an area in India where Hindu is the primary language. *See Mohamed v. Ashcroft*, 396 F.3d 999, 1006 (8th Cir. 2005) (citing 8 C.F.R. § 208.13(b)(2)(ii)) (noting that relocation must not only be possible, it must also be reasonable).

For these reasons, the Court finds that the respondent did not satisfy his burden of proof for withholding of removal. Accordingly, his application for withholding of removal is denied.

## C. **Protection under the CAT**

Had the respondent provided credible testimony, his application for protection under the CAT would be denied. To qualify for protection under the Convention Against Torture (CAT), an applicant must show that it is more likely than not that he or she will face severe pain or suffering, which would be intentionally inflicted by or at the instigation of or with the consent or acquiescence of a public official or other individual acting in an official capacity. 8 C.F.R. § 1208.16(c)(2). The Eighth Circuit has adopted the "willful blindness" standard ruling that "the inquiry into whether a government acquiesces centers upon the willfulness of a government's non-intervention," stating that a "government does not acquiesce to the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows a willful blindness toward the torture of citizens by third parties." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009) (citing *Mouawad v. Gonzalez*, 485 F.3d 405, 413 (8th Cir. 2007)).

In this case, the respondent fears that he would be tortured by members of the BJP political party if he returns to India. He contends that the Indian government would acquiesce to his torture because the police did not investigate BJP party members who harmed him in the past. More specifically, the respondent testified that he reported an incident where BJP party members attacked him to the police, but they did nothing in response. However, a police force's failure to investigate crimes is generally not considered acquiescence. *See Bartolo-Diego v. Gonzalez*, 490 F.3d 1024, 1029 (8th Cir. 2007) ("Even though the government's failure to investigate and punish ....clandestine criminal groups who break the law has resulted in human rights abuses, the failure

is due more to a weak and inefficient judicial system than to government acquiescence or approval.").

Further, the respondent's testimony reflects that Indian police officers threatened to implicate him in false crimes if he continued to make complaints against the BJP party. Assuming these threats were made, the record reflects that the respondent could avoid the possibility of future torture by relocating in India. Much like withholding of removal, CAT protection is unwarranted where the applicant could avoid future torture by relocating to a different area in the country of removal. *See 8* C.F.R. § 208.13(b)(3); *see also Saldana v. Lynch*, 820 F.3d 970, 974, 977 (8th 2016) (finding that relocation was reasonable where the applicant's threat of future harm did not exist outside of her home state in Mexico). As previously discussed, the documentary evidence suggests that Sikhs reside throughout India unharmed in areas outside of Punjab. Exh 3 at p. 30. Further, Sikhs enjoy political power at the "highest levels" in India. *Id.* at p. 83. Therefore, the evidence fails to suggest that the respondent would be targeted for torture on account of his religion or political opinion in areas outside of Punjab.

For the above reasons, the respondent did not meet his requisite burden of proof for protection under the CAT. As a result, the Court denies his application for relief under the CAT and enters the following orders:

## ORDERS

**IT IS HEREBY ORDERED** that the respondent's application for withholding of removal under INA § 241(b)(3) of the Act be **DENIED**.

**IT IS FUTHER ORDERED** that the respondent's application for relief under the Convention Against Torture be **DENIED**.

**IT IS FURTHER ORDERED** that the respondent be ordered removed from the United States to **INDIA**.

GLEN R. BAKER
Immigration Judge

**Notice of Intent/Decision to Reinstate Prior Order**

U.S. Department of Homeland Security

File No. 078 155 087
Event No: HTC1603000809
Date: March 7, 2016

FIN #: 5539693

Name: AMANDEEP SINGH

In accordance with section 241(a)(5) of the Immigration and Nationality Act (Act) and 8 CFR 241.8, you are hereby notified that the Secretary of Homeland Security intends to reinstate the order of _____ Removal _____ entered against you. This intent
(Deportation / exclusion / removal)

is based on the following determinations:

1. You are an alien subject to a prior order of deportation / exclusion / removal entered on ____April 8, 2001____ at
(Date)

____Washington, D.C.____
(Location)

2. You have been identified as an alien who:

☑ was removed on ____April 8, 2001____ pursuant to an order of deportation / exclusion / removal.
(Date)

☐ departed voluntarily on _____ pursuant to an order of deportation / exclusion / removal on or
(Date)

after the date on which such order took effect (i.e., who self-departed)

3. You illegally reentered the United States on or about ___February 13, 2016___ at or near ___Calexico, CA___
(Date) (Location)

In accordance with Section 241(a)(5) of the Act, you are removable as an alien who has illegally reentered the United States after having been previously removed or departed voluntarily while under an order of exclusion, deportation or removal and are therefore subject to removal by reinstatement of the prior order. You may contest this determination by making a written or oral statement to an immigration officer. You do not have a right to a hearing before an immigration judge.

*The facts that formed the basis of this determination, and the existence of a right to make a written or oral statement contesting this determination, were communicated to the alien in the ___Punjabi___ language.*

____F-7357 VERONICA____                                    /s/ (Signature of officer)
(Printed or typed name of official)

                                                            DO
                                                    (Title of officer)

---

**Acknowledgment and Response**

I ☐ do ☑ do not wish to make a statement contesting this determination.        Amandeep Singh
                                                                    (Signature of Alien)
____03/01/2016____
(Date)

---

**Decision, Order, and Officer's Certification**

Having reviewed all available evidence, the administrative file and any statements made or submitted in rebuttal, I have determined that the above-named alien is subject to removal through reinstatement of the prior order, in accordance with section 241(a)(5) of the Act.

____March 7, 2016____        ____Wichita, KS____              /s/ (Signature of authorized deciding official)
(Date)                       (Location)

                                                            SDDD
                                                    (Title)
☐ ____DEBRA MCNEAL____
(Printed or typed name of official)

                                                    Form I-871 (Rev. 08/01/07)

U.S. Department of Justice
Immigration and Naturalization Service

AFile

Notice and Order of Expedited Removal

## DETERMINATION OF INADMISSIBILITY

File No:   A# 78 155 083

Date:   04-08-01

In the Matter of:   SINGH, Amandeep

Pursuant to section 235(b)(1) of the Immigration and Nationality Act (Act), (8 U.S.C. 1225(b)(1)), the Immigration and Naturalization Service has determined that you are inadmissible to the United States under section(s) 212(a) [X] (6)(C)(i); [ ] (6)(C)(ii); [X] (7)(A)(i)(I); [ ] (7)(A)(i)(II); [ ] (7)(B)(i)(I); and/or [ ] (7)(B)(i)(II) of the Act, as amended, and therefore are subject to removal, in that:

Section 212(a)(6)(C)(i) of the Immigration and Nationality Act, as amended, as an alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this Act.

Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, as amended, as an immigrant who, at the time of application for admission, is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211 (a) of the Act.

Antonio Cintron, Special Operations Inspector
Name and title of immigration officer (Print)

Signature of immigration officer

## ORDER OF REMOVAL
### UNDER SECTION 235(B)(1) OF THE ACT

Based upon the determination set forth above and evidence presented during inspection or examination pursuant to section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, you are found to be inadmissible as charged, and ordered removed from the United States.

Antonio U. Cintron
Name and title of immigration officer (Print)

Signature of immigration officer

Ed Bolton, AAAPD
Name and title of supervisor  (Print)

Signature of supervisor, if available

[ ] Check here if supervisory concurrence was obtained by telephone or other means (no supervisor on duty).

## CERTIFICATE OF SERVICE

I personally served the original of this notice upon the above-named person on   April 8, 01

(Date)

Signature of immigration officer

Form I-860 (Rev. 4-1-97)

"ALIEN HAS BEEN ADVISED OF ...   ... PRIVILEGES PURSUANT
TO 8CFR 242.2(e)"

ੴ ਸਤਿਗੁਰ ਪ੍ਰਸਾਦਿ ॥

**SHIROMANI AKALI DAL**

ਸੁਖਜਿੰਦਰ ਸਿੰਘ ਕਾਜਮਪੁਰ

Ref no. Kazam mccov97 2017/-213

Date- 15/04/2017

I Sukhjinder singh Kazampur Senior Vice President ( Farmer wing ) and Executive Member (National) Shiromani Akali Dal Amritsar (Maan)

Certified that

1. I personally Know S. Amandeep singh S/o S. Hardeep singh and his family Residence of H no 36, Surst Nagar Jinda Road, Maqsudan Jalandhar Punjab(INDIA) Now Residence in Chase Country Detention Centre Jail P.O BOX # 639 Cotton Wood Falls KS # 66845 (U.S.A) His case no. A#078-155-083 He and his family is permanent workers and supporter of Shiromani Akali Dal Amritsar(Maan) The Sikh political party which is Struggling , Peacefully and Democratically for the freedom of the sikh peoples.

2. Amandeep singh while in India working for our party by pasting rally poster the supporters of ruling party of Badal and B.J.P oppose him to paste Rally posters on walls and beaten bitterly . When Amandeep singh went to police station Maqsudan to report for this incedent police refused to register the case under the pressure of ruling party Goverment and threaten to indulge Amandeep singh in fake criminal case.

3. Amandeep singh joint our party Shiromani Akali Dal Amritsar ( Maan) in May 2014 He was active party worker and actively join our parties every programme which were Organization .

4. If Amandeep singh return to India( theocratic Hindu Indian state ) he will be persecuted by the government of India . Amandeep singh can also be falsely in implicated in a criminal case and even eliminated in fake police encounter .

5. As such I wood recommend that amandeep singh be given political asylum as per the justict and liberal laws of your country and in accordance with the U.N. charter .

6. Our party president does not do any work related to the party owing to his illhealth so new letter can not be issued upto two month advised bed rest by doctor.



016

Detainee

 **U.S. Immigration and Customs Enforcement**

# DETAINEE TRANSFER NOTIFICATION

*This Form To Be Completed And Given To The Detainee*

DETAINEE NAME:  Singh, Amandeep          A#    078-155-083

NATIONALITY:          India

## TRANSFER INFORMATION

NAME OF NEW FACILITY:  **CHASE COUNTY JAIL**

ADDRESS OF NEW FACILITY: **301 WALNUT ST**

 **COTTON WOOD
 FALL, KS, 66845**

TELEPHONE NUMBER
OF NEW FACILITY:          (620-273-8313

---

I hereby acknowledge that I have received the transfer information. I have also been notified that it is my responsibility to notify family members or others, if I so desire.

Detainee Signature: *Amandeep Singh* A#: 078-155-083   Date: 2/21/2016

Agent/Officer Signature: _____   Date: _____



**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**KANSAS CITY, MISSOURI**

**File Numbers: A078-155-083**

Dated: 8/17/17

In the Matters of:                              )
                                               )
    **AMANDEEP SINGH**                      )
                                               )
                                               )        **In Withholding Only Proceedings**
        Respondent.                   )
                                               )
_____                 )

**Applications:** Withholding of Removal under INA § 241(b)(3) and Relief under the Convention Against Torture (CAT).

**ON BEHALF OF RESPONDENT:**
Samuel Ouya Maina, Esq.
Law Offices of S. Ouya Maina, PC
2140 Shattuck Ave., Suite 1110
Berkeley, CA 94704

**ON BEHALF OF DHS:**
Trisha Lacey, Asst. Chief Counsel
DHS-ICE-OCC
2345 Grand Boulevard, Suite 500
Kansas City, MO 64108

## WRITTEN DECISION OF THE IMMIGRATION JUDGE

**A.**    **Background**

      The respondent is a 37-year-old male who is a native and citizen of India. On or about February 13, 2016, he entered the United States without inspection at or near Calexico, California. *See* Notice of Referral to Immigration Judge. Exhibit (Exh) 1. The Department of Homeland Security (DHS) commenced removal proceedings against the respondent on April 13, 2016. *Id.* DHS brought these proceedings pursuant to section 241(a)(5) of the INA by reinstating the respondent's previous removal order, which the government issued on April 8, 2001. *See* Notice and Order of Expedited Removal (Form I-860), Apr. 8, 2001.

      On August 8, 2016, the respondent filed a Form I-589 (Exh 4 at 1-10), applications for withholding of removal under INA section 241(b)(3) and protection under the CAT, 8 C.F.R.

section 1208.16(c). On August 11, 2016, the Court held an individual hearing on the merits of his applications.

At his merits hearing, the Court entered an oral decision denying the respondent's applications for withholding of removal and protection under the CAT. *See* Oral Decision and Order of the Immigration Judge, Aug. 11, 2016. The Court found that the respondent failed to show that he suffered past persecution or would likely suffer future persecution in India. *Id.* The Court emphasized that the respondent's corroborating evidence lacked credibility and consequently, weighed against the veracity of his claim for relief. *See id.* The respondent timely appealed the Court's decision.

On January 23, 2017, the Board of Immigration Appeals (the Board or BIA) issued an order remanding the respondent's case. *See* Decision of the Board of Immigration Appeals, Jan. 23, 2017. The BIA remanded the case for the Court to render more detailed findings of facts, including specific findings of fact with respect to the authenticity and truthfulness of any significant corroborating documents submitted by the respondent. *Id.* at 1. Upon remand, the Board gave the Court the opportunity to hold further hearings and it allowed both parties to submit further evidence if necessary. *Id.* at 2. As a result, the respondent submitted additional documents to resolve the credibility and authenticity issues surrounding the initial documentary evidence that he filed in support of his Form I-589. *See* Respondent's Documents in Support of Case (pp. 1-19), May 8, 2017.[1] In response, DHS submitted documentation in support of its position that the respondent lacks credibility and that his applications for relief should be denied. *See* Department's Submission of Position and Forensic Document Lab Results, Jun. 9, 2017.

**B.**   **Evidence**

**A.**   **Testimony**

No new testimony was entered into the record on remand, and the Court incorporates its summary of the respondent's testimony from its oral decision issued on August 11, 2016. *See* Oral Decision and Order of the Immigration Judge, August 11, 2016.

**B.**   **Documentation**

Ex. 1:  Notice of Referral to Immigration Judge, filed April 18, 2016.

---

[1] On or about May 5, 2017, the respondent filed the same documents. But he refiled the documents on May 8, 2017 because better reproductions became available.

Ex. 2: DHS's submission of the Department of State (DOS) Human Rights Report for India 2015 (pp. 1-67)

Ex. 3: DHS's Notice of Filing Documents (pp. 68-163)

Ex. 4: Respondent's Form I-589 (pp. 1-10) and supporting documents (pp. 11-95)[2]

Ex. 5: Form I-867A, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the INA

## C.   Analysis and Findings of Law

### A. Credibility

The Court finds that the respondent lacked credibility. In all applications for asylum and withholding of removal, the Court must make a threshold credibility finding. *See Matter of O-D-,* 21 I&N Dec. 1079, 1081 (BIA 1998). An adverse credibility finding must be supported by "specific and cogent" reasons that have a legitimate nexus to the finding in the case. *See Matter of A-S-,* 21 I&N 1106, 1109-10 (BIA 1998). "[B]ecause the [Immigration Judge] is in the best position to evaluate an alien's testimony, his or her credibility determinations are to be given much weight." *Esaka v. Ashcroft,* 397 F.3d 1105, 1109 (8th Cir. 2005) (citing *Perinpanathan v. I.N.S.,* 310 F.3d 594, 597 (8th Cir. 2002)). The following factors, taking into consideration the "totality of the circumstances," may be considered in the assessment of an applicant's credibility: demeanor, candor, responsiveness of the applicant, the inherent plausibility of the claim, the consistency between oral and written statements, the consistency of such statements with evidence of record, and any inaccuracy or falsehoods in such statements, even if those inaccuracies or falsehoods are not centrally related to the applicant's claim. INA § 208(b)(1)(B)(iii).

In this case, the respondent provided inconsistent testimony at his merits hearing. More specifically, the documents presented by the respondent contradicted his testimony and failed to corroborate elements of his claim. While minor and isolated discrepancies in the applicant's testimony are not necessarily fatal to credibility, omission of key events coupled with numerous inconsistencies may lead to a finding that the applicant is not credible. *See A-S-,* 21 I&N Dec. at 1109-10. Although lack of corroborative evidence is not necessarily fatal to an asylum application, if an Immigration Judge or other trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the

---

[2] As previously mentioned, the respondent's Form I-589 includes applications for withholding of removal and protection under the CAT. He did not submit an application for asylum under INA section 208.

applicant does not have the evidence and cannot reasonably obtain it. INA § 208(b)(1)(B)(ii). If such evidence is unavailable, the applicant must explain its unavailability. *See Matter of S-M-J,* 21 I&N Dec. 722, 724-26 (BIA 1997). For the reasons discussed below, the Court finds that the respondent was not credible.

First, the respondent presented a series of newspapers articles as evidence of country conditions in India. Exh 4 at p. 48-95. But he did not provide the original versions of any of the articles. Instead, the respondent presented photocopy versions that contain little to no identifying information. For instance, the photocopies do not include the names or publishing dates for several of the articles. In fact, some of the articles are completely illegible. *Id.* at p. 48, 69. Moreover, the respondent did not explain how the newspaper articles relate to his claim. When asked about the articles, he conceded that he never saw any of them and that he was unfamiliar with their contents.

Second, on remand, the respondent submitted four affidavits from family and friends who live in India and a letter from Singh Kazampur, the Vice President of his political party. *See* Respondent's Documents in Support of Case at p. 1-16. Additionally, he presented a letter and a receipt of purchase from Sialkot Enterprises, a sporting goods store in India. *Id.* at p. 17-19. All of these evidentiary items allegedly came from India, but the record fails to demonstrate the chain of custody for any of the documents. The respondent did not present any evidence showing how he received the items. For instance, he did not submit the mailing envelopes for any of the documents. Further, the record contains both Punjabi and English versions of the four affidavits. *Id.* at p. 1-15. But the English versions lack certified translations. Moreover, the letter from the Indian sporting goods store does not include a sworn statement affirming its contents. *Id.* at p. 17.

Third, the record contains two affidavits from the respondent's mother. The first was submitted with the respondent's I-589 application and the second was submitted on remand. Although his mother's affidavits discuss the same incidents, they tell different stories. In her first affidavit, she wrote that five people attacked the respondent on October 17, 2015. Exh 4 at p. 20. She stated that the respondent recognized his attackers as people who worked for the BJP party. *Id.* His mother explained that the respondent suffered internal injuries, particularly to his back and ribs, as a result of the incident. *Id.* Further, when discussing the December 20, 2017 incident, she wrote that five people attacked the respondent when he was putting up posters for his political party. *Id.* In contrast, in her second affidavit, the respondent's mother wrote that her son was attacked in October 2015 by members of the Shiromani Akali Dal and BJP political parties. *See*

Decision – A078-155-083                    4

Respondent's Documents in Support of Case at p. 1-2. Also, she never mentioned that the respondent incurred any injuries as a result of the October 2015 incident. Moreover, her second affidavit indicates that the respondent was attacked by a few people when he was handing out pamphlets for his political party on December 17, 2015. *Id.* at p. 2. She continued that her husband's brother-in-law, Jagjit Singh, reached out to their family after the incident. *Id.* Thus, the respondent's mother's second affidavit contains facts about the October and December 2015 incidents that are inconsistent with her first affidavit.

Her affidavits are also inconsistent with the respondent's testimony about the October and December 2015 incidents. The respondent testified that the same five people beat him up on both occasions. He explained that all five of his attackers belonged to the BJP party. The respondent identified one of them as the BJP's local party leader, Ravi Paul. Further, the respondent mentioned that he was putting up posters for his political party when they attacked him during the December 2015 incident. To the contrary, his mother's second affidavit indicates that he was handing out political pamphlets when he was attacked during the December 2015 incident. *Id.* at p. 2. Additionally, the affidavits from the respondent's mother fail to indicate that he was attacked by the same five persons in October and December 2015. In fact, his mother's second affidavit suggests that some of the people who attacked the respondent in December 2015 belonged to the Shiromani Akal Dal party. *Id.* Also, her second affidavit fails to reflect that the respondent was attacked by five persons during the December 2015 incident. Rather, she wrote that a few persons attacked him. *Id.* Thus, the respondent's mother's affidavits do not corroborate key aspects of the respondent's testimony about the incidents.

Fourth, the record includes two affidavits from Charan Singh, a friend of the respondent's father. Nonetheless, his second affidavit contains information that is inconsistent with his first affidavit. In his second affidavit, Mr. Singh wrote that five people attacked the respondent in December 2015 when he was distributing pamphlets for his political party. *See* Respondent's Documents in Support of Case at p. 6. He explained that the attackers were members of the Akali Dal Badal and the BJP political parties. *Id.* Mr. Singh continued that the respondent's mother called him after the incident to tell him about what happened. *Id.* In contrast, in his first affidavit, Mr. Singh wrote that five people attacked the respondent in December 2015 when he was putting up political posters. Exh 4 at p. 26. He never mentioned that any of the respondent's attackers belonged to the Akali Dal Badal party. Instead, Mr. Singh wrote that the attackers were BJP

workers. *Id.* at p. 27. Further, he never stated that the respondent's mother contacted him after the incident. Also, Mr. Singh's first affidavit fails to indicate that he knew about the October 2015 incident.

Similarly, Mr. Singh's second affidavit is inconsistent with the respondent's testimony. For instance, he wrote that people attacked the respondent in December 2015 when he was passing out political pamphlets. *See* Respondent's Documents in Support of Case at p. 6. But the respondent stated that people attacked him in December 2015 when he was putting up political posters. It should be noted that Mr. Singh's second affidavit is inconsistent with the respondent's mother's affidavits. For example, Mr. Singh mentioned that the respondent's mother contacted him after the December 2015 incident and that they reported it to the police. *Id.* at p. 6. However, neither of the respondent's mother's affidavits mention that she contacted Charan Singh after the December 2015 incident. Rather, her affidavits indicate that she called a family friend named Prem Singh after the incident. *Id.* at p. 3; Exh 4 at p. 21.

Fifth, the record contains two affidavits from Prem Singh, another friend of the respondent's father. In his second affidavit, Prem Singh wrote that a few people attacked the respondent in December 2015 when he was handing out political pamphlets. *See* Respondent's Documents in Support of Case at p. 13. He continued that the respondent identified one of his attackers as a member of the BJP party. *Id.* In contrast, when describing the December 2015 incident in his first affidavit, Prem Singh wrote that five people attacked the respondent when he was putting up political posters. Exh 4 at p. 31. He stated that all of the respondent's attackers were BJP workers. *Id.* at p. 32. This shows that Prem Singh's second affidavit contains information about the December 2015 incident that is inconsistent with his first affidavit. His second affidavit is also inconsistent with the respondent's testimony about the December 2015 incident. For instance, the respondent testified that five people attacked him when he was putting up political posters rather than when he was distributing political handouts. *See* Respondent's Documents in Support of Case at p. 13.

Sixth, the record contains three letters from the Shiromani Akali Dal Amritsar, the respondent's political party. The respondent submitted two of the letters with his I-589 application and the third letter on remand. The first letter is signed by the President of his political party, Sardar Simranjit Singh Mann. Exh 4 at p. 37-47. It contains generalized information about the party and the persecution that its members have faced in the past. *Id.* The letter fails to include any

personalized information about the respondent aside from his name. For instance, it never mentions the October or December 2015 incidents. Similarly, the second letter from the respondent's political party does not include any information specifically relating to the respondent. *Id.* at p. 49-50. The letter outlines human rights violations committed against the party's members in general. *Id.* Also, it is signed by the President of the respondent's political party. *Id.* at p. 50. Although the first and second letters are signed by the same persons, they contain physical signatures that look dramatically different.

The third letter from the respondent's political party is signed by the party's Vice President, Sukhjinder Singh Kazampur. *See* Respondent's Documents in Support of Case at p. 16. The letter mentions that people beat up the respondent when he was putting up posters for the party. *Id.* But it fails to indicate when the incident happened. Also, the letter states that the people who beat him up belonged to the Shiromani Akali Dal Badal and the BJP political parties. *Id.* This contradicts the respondent's testimony that all five of his attackers were members of the BJP. Moreover, there is no evidence verifying the chain of custody for the three letters. For instance, the respondent did not submit the original envelopes for any of the letters. Additionally, each letter is written in English. The record does not contain versions of the letters written in any other languages even though they were allegedly drafted in India.

Seventh, the respondent testified about an incident where individuals attacked him with baseball bats. When asked, he affirmed that baseball bats are available for purchase in India even though baseball is not a popular sport there. On remand, the respondent submitted a letter and receipt of purchase from an Indian sporting goods store. *Id.* at p. 17-19. The receipt lists the respondent's name and it indicates that he purchased a baseball bat from the store. *Id.* at p. 18. The respondent also presented a picture showing two baseballs bats aligned next to the receipt. *Id.* at p. 19. However, he did not submit any evidence authenticating the letter or the receipt. As previously discussed, the letter from the store does not include a sworn statement confirming the truth of its contents. It has a stamp indicating that a partner for the store signed the document, but the physical signature is illegible. *Id.* at p. 17. Additionally, there is nothing verifying that the baseball bats in the picture submitted by the respondent were purchased at the Sialkot Enterprises sporting goods store in India. *Id.* at p. 18-19.

Even if the letter and the receipt of purchase from the sporting goods store are authentic, they do not directly relate to the elements of the respondent's claim. For instance, the documents

may corroborate the respondent's testimony that baseball bats are sold in India. But they do not prove that people hit the respondent with baseball bats when he resided in the country. Moreover, there is nothing in the record suggesting that any person who attacked the respondent purchased a baseball bat from Samrat Sports Industries or Sialkot Enterprises. *Id.* at 17-19.

Lastly, the record reflects that the respondent made willful misrepresentations when attempting to gain entry into the United States. In 2001, the respondent attempted to enter the country by applying for a C1/D employment visa. Exh 5 at p. 2. To support his visa application, he presented a fraudulent employment letter and a counterfeit seaman book suggesting that he was coming to the United States to work on a vessel. *Id.* The record contains a sworn statement made by the respondent affirming that he knowingly committed fraud for the purposes of procuring an immigration benefit. Exh 5. At his merits hearing, the respondent admitted again to the unlawful conduct. The respondent's previous misrepresentations weigh significantly against the credibility of his testimony. *See Ali v. Holder*, 686 F.3d 534 (8th Cir. 2012) (affirming an Immigration Judge's adverse credibility finding where the applicant made willful misrepresentations on his immigration papers to gain entry into the United States).

The Court may properly base a credibility finding on a lack of corroborating evidence where it also encounters inconsistent testimony or contradictory evidence. *See Esaka v. Ashcroft*, 397 F.3d 1105, 1110 (8th Cir. 2005) Where it is reasonable to expect corroborating evidence for certain specific elements of an applicant's claim, such evidence should be provided. *See Matter of S-M-J-*, 21 I&N Dec. at 725-26. If the Court encounters inconsistencies in the testimony, contradictory evidence, or inherently improbable testimony, the absence of corroboration can lead to a finding that an applicant has failed to meet his or her burden of proof. *See Rucu-Roberti v. INS*, 177 F.3d 669, 670 (8th Cir. 1999) (indicating that when an applicant makes implausible allegations and fails to present corroborating evidence, an adverse credibility determination may be warranted). For the specific reasons discussed above, the Court finds that the respondent did not testify credibly in support of his applications for relief.

### B. Withholding of Removal

Even if the respondent provided credible testimony, the Court would deny his application for withholding of removal. An applicant must establish that there is a "clear probability" that his life or freedom would be threatened on account of the applicant's race, religion, nationality, membership in a particular social group, or political opinion. *See INA § 241(b)(3)(C); Antonio-*

Decision – A078-155-083                                    8

*Fuentes v. Holder*, 764 F.3d 902, 904 (8th Cir. 2014). In other words, withholding of removal will be granted only if an applicant proves that it is more likely than not that he would be persecuted upon return to the applicant's country. *Goswell-Renner v. Holder*, 762 F.3d 696, 700 (8th Cir. 2014).

An alien may satisfy the burden of proof for withholding of removal in two ways. First, the applicant may show that the applicant has suffered past persecution in the proposed country of removal on account of one of the five above-listed protected grounds. *See* 8 C.F.R. § 1208.16(b)(1). Second, the applicant may establish that he would more likely than not be persecuted in the future on account of a protected ground if he returned to the country of removal. *See* 8 C.F.R. § 1208.16(b)(2). But if the applicant could avoid the threatened danger by relocating to another part of the country, then withholding of removal is unwarranted. 8 C.F.R. § 1208.16(b)(2). In this case, the respondent did not meet his requisite burden of proof for withholding of removal.

First, the respondent contended that he suffered past persecution on account of his religion and political opinion in India. He testified about two incidents where five members of an opposing political party beat him up. The INA does not define persecution to include "all treatment that society regards as unfair, unjust, or even unlawful or unconstitutional." *Matter of V-T-S-*, 21 I&N Dec. 792, 798 (BIA 1997). For instance, minor beatings or limited detentions do not usually rise to the level of past persecution. *Bhosale v. Mukasey*, 549 F.3d 732, 735 (8th Cir. 2008). The respondent testified that the individuals slapped him and hit him with their fists. During one of the incidents, they hit him with baseball bats and knocked him unconscious. Although the record shows that the respondent endured physical harm, it fails to suggest that he sustained any serious injuries as a result. *See Tawm v. Ashcroft*, 363 F.3d 740, 743 (8th Cir.2004) (holding that "the mere presence of some physical harm does not require a finding of past persecution"). Further, the record reflects that the respondent received medication for pain and swelling after the incident where he was knocked unconscious. There is nothing suggesting that he required any additional or more extensive medical treatment or assistance.

Second, the record reflects that the respondent could avoid future harm by relocating to another part of India. *See* 8 C.F.R. § 1208.16(b)(2). Both incidents where the respondent was harmed by BJP members happened in Punjab, India. There is no evidence suggesting that the BJP members who mistreated the respondent would travel outside of Punjab to search for him. Further,

the record lacks any evidence demonstrating widespread persecution of Sikhs in India. The documentary indicates that Sikhs reside across India and that they are generally not targeted for harm in other parts of India outside of Punjab. Exh 3 at p. 30. Additionally, the respondent speaks both Punjabi and Hindu. Hindu is India's "most widely spoken language" and it is the "primary tongue" of 41% of the country's population. *Id.* at p. 94. Thus, it would not be unreasonable for the respondent to relocate to an area in India where Hindu is the primary language. *See Mohamed v. Ashcroft*, 396 F.3d 999, 1006 (8th Cir. 2005) (citing 8 C.F.R. § 208.13(b)(2)(ii)) (noting that relocation must not only be possible, it must also be reasonable).

For these reasons, the Court finds that the respondent did not satisfy his burden of proof for withholding of removal. Accordingly, his application for withholding of removal is denied.

## C. **Protection under the CAT**

Had the respondent provided credible testimony, his application for protection under the CAT would be denied. To qualify for protection under the Convention Against Torture (CAT), an applicant must show that it is more likely than not that he or she will face severe pain or suffering, which would be intentionally inflicted by or at the instigation of or with the consent or acquiescence of a public official or other individual acting in an official capacity. 8 C.F.R. § 1208.16(c)(2). The Eighth Circuit has adopted the "willful blindness" standard ruling that "the inquiry into whether a government acquiesces centers upon the willfulness of a government's non-intervention," stating that a "government does not acquiesce to the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows a willful blindness toward the torture of citizens by third parties." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009) (citing *Mouawad v. Gonzalez*, 485 F.3d 405, 413 (8th Cir. 2007)).

In this case, the respondent fears that he would be tortured by members of the BJP political party if he returns to India. He contends that the Indian government would acquiesce to his torture because the police did not investigate BJP party members who harmed him in the past. More specifically, the respondent testified that he reported an incident where BJP party members attacked him to the police, but they did nothing in response. However, a police force's failure to investigate crimes is generally not considered acquiescence. *See Bartolo-Diego v. Gonzales*, 490 F.3d 1024, 1029 (8th Cir. 2007) ("Even though the government's failure to investigate and punish … clandestine criminal groups who break the law has resulted in human rights abuses, the failure

Decision – A078-155-083                                   10

is due more to a weak and inefficient judicial system than to government acquiescence or approval.").

Further, the respondent's testimony reflects that Indian police officers threatened to implicate him in false crimes if he continued to make complaints against the BJP party. Assuming these threats were made, the record reflects that the respondent could avoid the possibility of future torture by relocating in India. Much like withholding of removal, CAT protection is unwarranted where the applicant could avoid future torture by relocating to a different area in the country of removal. *See 8* C.F.R. § 208.13(b)(3); *see also Saldana v. Lynch*, 820 F.3d 970, 974, 977 (8th 2016) (finding that relocation was reasonable where the applicant's threat of future harm did not exist outside of her home state in Mexico). As previously discussed, the documentary evidence suggests that Sikhs reside throughout India unharmed in areas outside of Punjab. Exh 3 at p. 30. Further, Sikhs enjoy political power at the "highest levels" in India. *Id.* at p. 83. Therefore, the evidence fails to suggest that the respondent would be targeted for torture on account of his religion or political opinion in areas outside of Punjab.

For the above reasons, the respondent did not meet his requisite burden of proof for protection under the CAT. As a result, the Court denies his application for relief under the CAT and enters the following orders:

## ORDERS

**IT IS HEREBY ORDERED** that the respondent's application for withholding of removal under INA § 241(b)(3) of the Act be **DENIED.**

**IT IS FUTHER ORDERED** that the respondent's application for relief under the Convention Against Torture be **DENIED.**

**IT IS FURTHER ORDERED** that the respondent be ordered removed from the United States to **INDIA.**

GLEN R. BAKER
Immigration Judge

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court


In the Matter of                                          File:  A078-155-083


                                    )
AMANDEEP SINGH                      )IN WITHHOLDING ONLY PROCEEDINGS
                                    )
    APPLICANT                       )            Transcript of Hearing


Before GLEN R. BAKER, Immigration Judge


Date: April 28, 2016                   Place: KANSAS CITY, MISSOURI


Transcribed by NATIONAL CAPITOL CONTRACTING


Official Interpreter:


Language: PUNJABI


Appearances:

  For the Applicant: MICKI BOUCHARD

  For the DHS: MELISSA CASTILLO

1   JUDGE FOR THE RECORD

2       We're on the record.  This is Immigration Judge Glen Baker sitting at the

3   Immigration Court in Kansas City, Missouri today.  Today's date is April 28, 2016.

4   We're here in the matter of Amandeep Singh, 078-155-083.  The respondent is

5   appearing by televideo.  He's represented at today's hearing by attorney Micki

6   Bouchard [phonetic].  The Department of Homeland Security is represented by

7   Assistant Chief Counsel, Melissa Castillo [phonetic].  The interpreter in the Punjabi

8   language is from Lionbridge.

9   JUDGE TO INTERPRETER

10      To the interpreter.  Can I get you to raise your right hand?  Do you swear or

11  affirm that the interpretation you will provide from English to Punjabi and Punjabi back to

12  English will be true and correct and to the best of your ability?

13  INTERPRETER TO JUDGE

14      I do, your honor.

15  JUDGE TO INTERPRETER

16      Thank you, sir.

17  JUDGE TO MR. SINGH

18      To the respondent.  Sir, is Punjabi your best language?

19  MR. SINGH TO JUDGE

20      Yes, yes, yes, I do.

21  JUDGE TO MS. BOUCHARD

22      What did you want to talk about today?

23  MS. BOUCHARD TO JUDGE

24      We'd like to try and secure a bond for him, so that he can be released to his

25  uncle's custody.

1    JUDGE TO MS. BOUCHARD

2        Okay.  The first question I have is, is it really his uncle?

3    MS. BOUCHARD TO JUDGE

4        From what I can gather, it is.

5    JUDGE TO MS. BOUCHARD

6        All right.

7    MS. BOUCHARD TO JUDGE

8        On the motion last night --

9    JUDGE TO MS. BOUCHARD

10       This is Santok Lal [phonetic]?

11   MS. BOUCHARD TO JUDGE

12       Yes.

13   JUDGE TO MS. BOUCHARD

14       Okay.

15   MS. BOUCHARD TO JUDGE

16       And, your honor, I'd be happy to ask him questions about his uncle.

17   JUDGE TO MS. BOUCHARD

18       Okay.  Let's do that.

19   JUDGE TO MR. SINGH

20       Sir, can I get you to raise your right hand for me?  Do you swear or affirm that the

21   testimony you will provide throughout this proceeding will be the truth, the whole truth,

22   and nothing but the truth?

23   MR. SINGH TO JUDGE

24       Yes, I will speak the truth.  I swear.

25   JUDGE TO MR. SINGH

A078-155-083                          2                          April 28, 2016

1        Thank you, sir. You can put your hand down.

2    JUDGE TO MS. BOUCHARD

3        Go ahead, Ms. Bouchard.

4    MS. BOUCHARD TO MR. SINGH

5        Mr. Singh, do you have any relatives in the United States?

6    MR. SINGH TO MS. BOUCHARD

7        My father is here.

8    MS. BOUCHARD TO MR. SINGH

9        What is the name of your father?

10   MR. SINGH TO MS. BOUCHARD

11       Hardeep Singh [phonetic].

12   MS. BOUCHARD TO MR. SINGH

13       And where does Hardeep live?

14   MR. SINGH TO MS. BOUCHARD

15       California.

16   MS. BOUCHARD TO MR. SINGH

17       Do you have any other relatives living in the United States?

18   MR. SINGH TO MS. BOUCHARD

19       I have an uncle.

20   MS. BOUCHARD TO MR. SINGH

21       And what is your uncle's name?

22   MR. SINGH TO MS. BOUCHARD

23       Santok Lal.

24   MS. BOUCHARD TO MR. SINGH

25       Is he your dad's brother? Or is he your mom's brother? Sir, is Sandeep your

1   uncle?  How is he related to you?

2   MR. SINGH TO MS. BOUCHARD

3       He's my uncle.  My dad's younger brother.

4   MS. BOUCHARD TO MR. SINGH

5       Okay.

6   JUDGE TO MS. CASTILLO

7       Ms. Castillo, is the respondent even eligible for bond?  He's in withholding only

8   proceedings

9   MS. CASTILLO TO JUDGE

10      He's in withholding only, but he's not an arriving alien.  He was apprehended

11  within the United States.  I thought he was bond-eligible.

12  JUDGE TO MS. CASTILLO

13      Okay.

14  MS. BOUCHARD TO JUDGE

15      Yes, your honor, my understanding of the statutes surrounding [indiscernible]

16  and redetermination of custody, he is eligible for a bond.  He has obtained the services

17  of an immigration attorney in San Francisco.  And his uncle lives in Tracy, California,

18  which is about 50 miles outside of San Francisco.  He has submitted the copies of his

19  uncle's U.S. passport, his U.S. citizenship certificate, his California driver's license, all

20  showing that Tracy.  He has also shown an electric bill, showing that he resides at that.

21  And there's also a support letter from his uncle.

22  JUDGE TO MS. CASTILLO

23      What's the Department's position?

24  MS. CASTILLO TO JUDGE

25      Well, I think this is in line with one of the other cases that we've seen when you

A078-155-083                          4                          April 28, 2016

1  set $6,000 or $7,000 bond. The respondent did enter the United States one time before

2  2001. He tried to enter with fraudulent documents and was expedited removed from the

3  airport. So, you know, he has tried to defraud the government in some way in the past

4  to enter. And I think that sets him apart a little bit from some of the others we've seen

5  who've never been here before.

6  JUDGE TO MS. CASTILLO

7      What possible relief do you think the respondent might seek?

8  MS. BOUCHARD TO JUDGE

9      Your honor, as he's not eligible for any discretionary relief, based on the prior

10  expedited removal, he is seeking withholding of removal and CAT, based on the recent

11  Indian government actions in the Punjabi region of India.

12  JUDGE TO MS. BOUCHARD

13      And what are they doing on these cases where the respondent has limited

14  contacts. And, in this case, I think he does have a family member that's maybe a little

15  bit less remote of a contact. But he also has more limited relief available to him. I think

16  $7,500 is the number I've got in my head.

17  MS. BOUCHARD TO JUDGE

18      Yeah. And based on the conversations with the attorney, I believe the family can

19  pay that.

20  JUDGE TO MS. CASTILLO

21      What's the Department's position on the $7,500 bond?

22  MS. CASTILLO TO JUDGE

23      Waive appeal.

24  MS. BOUCHARD TO JUDGE

25      Yes, your honor. Waive appeal as well.

A078-155-083                    5                    April 28, 2016

1    JUDGE TO MR. SINGH

2        Sir, I set bond in your case. So, stay in touch with your attorney and she will

3    advise you accordingly.

4    JUDGE TO MS. BOUCHARD

5        Do you need some attorney prep time?

6    MS. BOUCHARD TO JUDGE

7        Your honor, I do. I'm not, as I noted on the EOIR 28, I am just appearing for the

8    bond hearing. His attorney, I believe, asked for a telephonic hearing from California and

9    San Francisco?

10   JUDGE TO MS. BOUCHARD

11       He did?

12   MS. BOUCHARD TO JUDGE

13       He's been in custody since --

14   JUDGE TO MS. BOUCHARD

15       Liam Myna [phonetic]?

16   MS. BOUCHARD TO JUDGE

17       Yes, sir.

18   JUDGE TO MS. BOUCHARD

19       Okay. Or Samuel Phil Myna [phonetic]?

20   MS. BOUCHARD TO JUDGE

21       It's a father-son law firm.

22   JUDGE TO MS. BOUCHARD

23       Okay. Well, that's all for bond proceedings, then. Thank you.

24   MS. BOUCHARD TO JUDGE

25       I'll let him know. Thank you, your honor.

A078-155-083                    6                    April 28, 2016

1   JUDGE TO MS. BOUCHARD

2        And I'll call the other attorney. Is that what you want me to do?

3   MS. BOUCHARD TO JUDGE

4        No, your honor. I can --

5   JUDGE TO MS. BOUCHARD

6        I need to know, I need to set this over or keep it on the docket. So, you want to

7   call it attorney prep time?

8   MS. BOUCHARD TO JUDGE

9        Yes, your honor. That would be great.

10   JUDGE TO MS. BOUCHARD

11        And how much time do you think you need? Three weeks' enough? You want a

12   little more?

13   MS. BOUCHARD TO JUDGE

14        A little bit more, your honor. Because I'm not aware of all the documentary

15   evidence that he has and if translations need to be made.

16   JUDGE TO MS. BOUCHARD

17        Okay. Four weeks is about as far as I feel comfortable going out. That's May 26

18   at 8:30?

19   MS. BOUCHARD TO JUDGE

20        Thank you, your honor.

21   JUDGE TO MS. BOUCHARD

22        Thank you, Ms. Bouchard.

23   JUDGE FOR THE RECORD

24        All right, sir. That's all for today. Thank you, sir.

25                          OFF THE RECORD

A078-155-083                         7                    April 28, 2016

1                              ON THE RECORD

2      JUDGE FOR THE RECORD

3              We're back on the record in the case of Amandeep Singh.  The court earlier

4      inadvertently granted the respondent's request for bond.  That has been ordered

5      vacated sua sponte.  The court believes that the respondent does not have -- or, that

6      the court does have authority to set bond, since the respondent is in withholding only

7      proceedings.  So, we did a brief telephone conversation with his attorney for bond, Micki

8      Bouchard.  She asked that she be allowed to make arguments on the respondent's

9      behalf that he is eligible for bond. And this case has been reset to May 19, 2016, at

10     8:30, for a discussion of the respondent's eligibility for bond.

11     JUDGE TO MS. CASTILLO

12             Anything further from the Department?

13     MS. CASTILLO TO JUDGE

14             I just want to clarify that the previous bond order will be --

15     JUDGE TO MS. CASTILLO

16             Vacated?

17     MS. CASTILLO TO JUDGE

18             Vacated.  Did you say that?  Thank you.

19     JUDGE TO MS. CASTILLO

20             Thank you.

21                             HEARING CLOSED

U.S. Department of Justice
Executive Office for Immigration Review
United States Immigration Court

File:  A078-155-083

In the Matter of

)
)IN WITHHOLDING ONLY PROCEEDINGS
AMANDEEP SINGH                                )
)                    Transcript of Hearing
APPLICANT

Before GLEN R. BAKER, Immigration Judge

Date: March 22, 2017                    Place: KANSAS CITY, MISSOURI

Transcribed by NATIONAL CAPITOL CONTRACTING

Official Interpreter:

Language: PUNJABI

Appearances:
  For the Applicant: CHRISTOPHER MCKINNEY
  For the DHS: M. BURGESS

1   JUDGE FOR THE RECORD

2       We're on the record.  This is Immigration Judge Glen Baker sitting at the

3   Immigration Court in Kansas City.  Today's date is March 22, 2017.  We're here in the

4   matter of Amandeep Singh, A-number 078-155-083.  The respondent is appearing by

5   televideo.  He is represented by attorney, Christopher McKinney, who is present in

6   court, as is Assistant Chief Counsel, M. Burgess [phonetic], for the Department of

7   Homeland Security.  The Punjabi interpreter is from Lionbridge.  She's appearing by

8   phone also.

9   JUDGE TO MR. SINGH

10      To the respondent --

11  JUDGE TO INTERPRETER

12      Let me swear the interpreter in.  Can I get you to raise your right hand?  Do you

13  swear or affirm that the interpretation you will provide from English to Punjabi and from

14  Punjabi back to English will be true and correct and to the best of your ability?

15  INTERPRETER TO JUDGE

16      Yes, I do.

17  JUDGE TO INTERPRETER

18      Thank you.

19  JUDGE TO MR. SINGH

20      To the respondent.  Sir, is Punjabi your best language?

21  MR. SINGH TO JUDGE

22      Yes. [indiscernible], yes.

23  JUDGE TO MR. MCKINNEY

24      Mr. McKinney, this case came back from the Board of Immigration Appeals.

25  They wanted, in the totality of the circumstances, for the court to take, to provide the

1   respondent one more opportunity to maybe firm up his corroborating evidence and/or

2   take additional testimony. Is that a fair statement?

3   MR. MCKINNEY TO JUDGE

4       That's my understanding, your honor. Right. As directed by the court, the Board

5   directed the respondent to provide more corroborating evidence.

6   JUDGE TO MR. MCKINNEY

7       And to have the opportunity to explain why the affidavits from his parents were in

8   English rather than Punjabi.

9   MR. MCKINNEY TO JUDGE

10      Yeah.

11  JUDGE TO MR. MCKINNEY

12      They need to provide originals.

13  MR. MCKINNEY TO JUDGE

14      To explain, if the types of affidavits that are requested aren't available, to explain

15  why they aren't available.

16  JUDGE TO MR. MCKINNEY

17      Okay. Do we need to take additional testimony? Or does the respondent want

18  some time to try to provide a more appropriate corroborating evidence?

19  MR. MCKINNEY TO JUDGE

20      In our opinion, your honor, the best evidence would be from a supplemental

21  affidavit that we'd request time to provide.

22  JUDGE TO MR. BURGESS

23      Okay. What's the Department's position. Do we need additional testimony?

24  JUDGE TO MR. BURGESS

25      Your honor, I don't believe that we need additional testimony. I think an affidavit

A078-155-083                          10                          March 22, 2017

1    would be sufficient.

2    JUDGE TO MR. MCKINNEY

3         Okay.  How much time does the respondent need for an affidavit?

4    MR. MCKINNEY TO JUDGE

5         45 days.

6    JUDGE TO MR. MCKINNEY

7         I think that's reasonable, given the distances we're talking about.  45 days is May

8    8th.

9    JUDGE TO MR. BURGESS

10        Does the Department need two weeks to respond to that?

11   MR. BURGESS TO JUDGE

12        That would be sufficient time, your honor.  I'd also like to note that the

13   respondent has provided the Department with the original documents for the documents

14   that were originally submitted in this case, for the prior master hearing.  So, we're going

15   to be looking at those for authenticity as well.

16   JUDGE TO MR. MCKINNEY

17        Okay.  So, the respondent's brief and evidence will be due May 8th, with a

18   response from the Department, let's say June 1st, just to make it a little easier.  June

19   1st, looks like that's a Thursday, with a written decision to follow.  That acceptable to the

20   respondent, Mr. McKinney?

21   MR. MCKINNEY TO JUDGE

22        Yes, your honor.

23   JUDGE TO MR. BURGESS

24        How about the Department?

25   MR. BURGESS TO JUDGE

1      Yes, your honor.

2   JUDGE TO COUNSELS

3      Okay.

4   JUDGE TO MR. SINGH

5      Sir -- to the respondent -- sir, your attorney is going to need you to work with him

6   to supplement the record.  The higher court sent your case back to me for additional

7   clarification of certain evidence.  Your attorney will submit additional evidence within 45

8   days and then the government will have an opportunity to review that evidence.  And, as

9   soon as both of those, both parties have an opportunity to provide evidence and

10  argument, then I will issue a written decision.  Does that make sense, sir?

11  MR. SINGH TO JUDGE

12     Yes, I'm understanding.

13  JUDGE TO COUNSELS

14     Anything we need to communicate to the respondent today?

15  MR. MCKINNEY TO JUDGE

16     No.

17  JUDGE TO MR. MCKINNEY

18     Okay.

19  MR. BURGESS TO JUDGE

20     No, your honor.

21  JUDGE TO MR. BURGESS

22     Okay.

23  JUDGE TO MR. SINGH

24     All right, sir.  That will be all for today.  Work with your attorney and shortly after

25  June 1st, I'll have a decision for you.  Okay?

A078-155-083                          12                    March 22, 2017

1   MR. SINGH TO JUDGE

2          Okay.  Thank you.

3   JUDGE FOR THE RECORD

4          Thank you, sir.  That's all for today.

5                              <u>HEARING CLOSED</u>

## CERTIFICATE PAGE

I hereby certify that the attached proceeding before JUDGE GLEN R. BAKER, in the matter of:

### AMANDEEP SINGH

A078-155-083

### KANSAS CITY, MISSOURI

was held as herein appears, and that this is the original transcript thereof for the file of the Executive Office for Immigration Review.

LINDA GARBY (Transcriber)

NATIONAL CAPITOL CONTRACTING

October 27, 2017

(Completion Date)

Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT – KANSAS CITY, MISSOURI

| | |
|---|---|
| In the Matter of: | ) |
| | ) |
| **SINGH, Amandeep** | ) |
| | ) |
| In Removal Proceedings. | ) |
| | ) |

File No.  **A 078 155 083**

Immigration Judge Baker

Next Hearing: None Scheduled

**RESPONDENT'S BRIEF**

A 078 155 083                                        Singh, Amandeep

## Background

On August 11, 2016, the Immigration Judge denied Mr. Singh's application for withholding of removal and for protection under the Convention Against Torture and ordered him removed to India. In the Oral Decision and Order of the Immigration Judge, the Judge found that Mr. Singh failed to meet his burden of proof but accepted his testimony and did not make an adverse credibility finding. Mr. Singh appealed to the Board of Immigration Appeals. The Board concluded that a remand was warranted regarding the contested issue of whether Mr. Singh presented sufficient corroborating evidence to satisfy his burden of proving his eligibility for withholding and protection under the CAT. Specifically, the board held that "a remand is warranted for more detailed findings of fact by the Immigration Judge, to include specific findings of fact with respect to the authenticity and truthfulness of any significant corroborating documents submitted by the applicant." At a hearing on March 22, 2017, the Immigration Judge allowed additional time for Mr. Singh to file corroborating documents.

On May 5, 2017, Mr. Singh filed additional corroborating documents. The same documents were refiled on May 8, 2017 due to the availability of higher-quality reproductions. The Department is in possession of the originals. The originals have been available since photocopies were filed on May 8, 2017. The Department was offered access to the originals on the same day. The original documents have been in the Department's possession since June 20, 2017. The documents filed include: new affidavits from Mr. Singh's mother, father, and friends; a letter from the Shiromani Akali Dal party; and a letter, receipt, and photos regarding baseball bat purchase in India.

## Foundational Objections

The Department contests the corroborating evidence only on foundational grounds. Specifically, the Department suggests that the corroborating evidence may not be properly authenticated because, for instance "the lack of chain of custody [...] brings the authenticity of those documents to question," and because the Forensic Document Lab results are inconclusive.

The Department's forensic lab is not the final arbiter of admissibility or evidential value. A document should not be afforded less weight only because the Department's lab cannot

1

A 078 155 083                                                              Singh, Amandeep

authenticate the document. *See Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000) (an ambiguous forensics lab determination can't be basis for proving a lack of credibility). There is no chain of custody requirement regarding documentation. Nevertheless, the Department was provided with the mailers used to ship the newly submitted documentation from India to the undersigned's office.

The affidavits provided by Mr. Singh are properly authenticated. Any evidence offered must be probative and its use must be fundamentally fair to guarantee due process of law. Although documentary evidence need not comply with the Federal Rules of Evidence, the Rules may provide strong support to the conclusion that the admission of evidence comports with due process. *Matter of Y-S-L-C-*, 26 I&N Dec. 688, 690 (BIA 2015). The affidavits filed by Mr. Sing would comport with Federal Rules of Evidence 902(8) as self-authenticating acknowledged documents.

### Corroboration

The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 1208.13(a). Pursuant to the REAL ID Act, the BIA requires an applicant to present corroboration of a claim even if the testimony is credible, unless corroboration is not reasonably available. *Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006). The Immigration Judge should not require "strong" or "conclusive" corroborative evidence. *See Chawala v. Holder*, 599 F.3d 998, 1008 (9th Cir. 2010). The Eighth Circuit Court of Appeals requires that an Immigration Judge: 1) rule explicitly on the credibility of the applicant's testimony; 2) explain why it was reasonable to expect additional corroboration; 3) if necessary, assess the sufficiency of the applicant's explanations for the absence of corroborating evidence. *El-Sheikh v. Ashcroft*, 388 F.3d 643 (8th Cir. 2004).

Mr. Singh testified that he left India because he was attacked, on two occasions, by members of the BJP. Tr. at 14. On one of the occasions, Mr. Singh was attacked from behind, hit with a baseball bat, and beaten for about half an hour to the point of unconsciousness. *Id.* at 19. Although, Mr. Singh does not have medical records available from his visit to a doctor, he has provided affidavits corroborating his testimony as to the attacks and his injuries. Police reports should not be required because the police told Mr. Singh that they would not pursue charges against members of the BJP. *Id.* The police also threatened Mr. Singh with a "fake drug case" should he make a report against those that attacked him. *Id.*

2

A 078 155 083

Singh, Amandeep

### Conclusion

Mr. Singh was found credible. He has provided corroborating documentation for his claims of past persecution. Specifically, he has provided documentation corroborating his political affiliations and his testimony regarding the times he was violently beaten. Wherefore, Mr. Singh requests that this Court grant his application for withholding of removal (alternatively his request under the CAT) or, should the Court find additional corroborating evidence is necessary, to specify what is necessary and to provide Mr. Singh with an opportunity to present it or to explain why it is unavailable.

Respectfully Submitted,

Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021
chris@chrisbmckinney.com

*For the respondent &*
*appearing on behalf of:*
Samuel Ouya Maina
2140 Shattuck Ave., Ste. 1110
Berkeley, CA 94704

### PROOF OF SERVICE

On August 2, 2017 I, Christopher B. McKinney, served a copy of this Respondent's Brief and attached pages to the Office of Chief Counsel, Department of Homeland Security, 2345 Grand Blvd., Suite 500, Kansas City, MO 64108 by email.

Christopher B. McKinney

3.



Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT – KANSAS CITY, MISSOURI

In the Matter of:         )
                                 )
                                 )
    SINGH, Amandeep        )    File No.  **A 078 155 083**
                                 )
In Removal Proceedings.     )
                                 )

Immigration Judge Baker      Next Hearing: None Scheduled

**RESPONDENT'S DOCUMENTS IN SUPPORT OF CASE**

**[Please Note: These documents were already filed on or about 5/5/2017, but are being refiled herein due to the availability of better reproductions.]**

A 078 155 083                                                                    Singh, Amandeep

## **TABLE OF CONTENTS**

**TAB**                                                                          **PAGE**

**AA**

Affidavit, with translation, signed by Amrjit Kaur, Respondent's mother ................................. 1-5

**BB**

Affidavit, with translation, signed by Charan Singh, Friend of Respondent's father ................... 6-8

**CC**

Affidavit, with translation, signed by Jagit Singh, brother-in-law of Respondent's father ........ 9-11

**DD**

Affidavit, with translation, signed by Prem Singh, Friend of Respondent's father .................. 12-15

**EE**

Letter from Party Shiromani Akali Dal, signed by Sukhjinder Singh Kazampur, Vice President.... 16

**FF**

Letter from Samrat Sports Industries ............................................................................................ 17

**GG**

Receipt of purchase from Sialkot Enterprises & photo of bats purchased ............................. 18-19

Respectfully Submitted,

Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021
chris@chrisbmckinney.com

*For the respondent &
appearing on behalf of:*
Samuel Ouya Maina
2140 Shattuck Ave., Ste. 1110
Berkeley, CA 94704

## AFFIDAVIT

I Amarjit Kaur W/o Hardeep Singh aged 63 years R/o H. No.36, Surat nagar, Jinda Road, Maqsudan, District Jalandhar do hereby solemnly affirm and declare as under:-

1. That my husband went to America 30 years ago in order to save his life from the ruling party and since then he is living in America.

2. That my elder son Amandeep Singh had joined Shiromani Akali Dal (Maan) Amritsar on 05 May 2014 and being the member of the party, he used to help poor people and poor girls for their marriage. He encouraged the children and youngsters in the Sikhism and he also help the drug addicts in De-Addiction Centre.

3. That on 17, October 2015, The Shiromani Akali Dal Amritsar (Maan) arranged the collective marriage ceremony of poor girls in Local Gurudwara. My son Amandeep Singh was looking after all the affairs in the marriage ceremony. After the end of the program, my son was coming back to his home, where five people of the ruling party i.e. Shiromani Akali Dal (Badal) and Bharti Janta Party stopped him on the way and they told my son that he should not work for Shiromani Akali Dal Amritsar (Maan) and they also offered my son to earn income by selling the drugs and they also told my son that they will provide every facility for this purpose. My son flatly refused to leave his party i.e. Shiromani Akali Dal (Maan) and he also refused to join their illegal work, thereafter, they slapped my son and gave merciless beating and they started

TARSEM SINGH
Advocate

001

abusing my son and they also threatened my son
that if my son will continue to serve the
Shiromani Akali Dal (Maan) they will
definitely kill him. While leaving the spot,
they again said to my son that he should leave
Shiromani Akali Dal Amritsar (Maan).

4. That after this incident, we went to police
station and narrated the whole story to the
police, we also provided the names of the
persons who were the workers of the Shiromani
Akali Dal (Badal) and Bharti Janta Party but
the police did not paid any heed to our
request, They told us to sit on the chair and
thereafter, they advised us that since Bharti
Janta Party and Shiromani Akali Dal (Badal)is
the ruling party, so we should not move the
complaint against the ruling party. When we
requested the police to write our complaint,
then the police officials flatly refused to
take our complaint and they threatened us that
if we will not leave the police station right
now, they will indulge my son Amandeep Singh
in a false case under NDPS and they will send
my son to the jail.

5. That on 20 December 2015, when my son was
pasting the Pamphlets against the drugs on
behalf of his party regarding the rally of his
party on 25-12-2015, suddenly few persons
attacked on my son Amandeep Singh from his
backside, they were carrying Baseball Bat. One
of them hit with baseball bat on the back of
my son Amandeep Singh. My son identified one
of them, he was the worker of Bharti Janta
Party. Thereafter, they all started beating my
son on the leg, back, hip and they told my son

002

that he has not left the Shiromani Akali Dal Amritsar (Maan) party, even their warning, now they will kill my son. My son was crying with the pain but they did not bother about the pain of my son and continued beating him and left him in unconscious state, presuming him to be dead. Some of persons on the road took him and one of them informed us on the phone regarding the above incident. After knowing this, I called my nieghborer Prem Singh and uncle (Fufarh) of Amandeep Singh from Mukerian, on telephone, when we were going to take Amandeep Singh he reached home, his body was swollen due to the severe beating. The doctor of the village has given first aid to the Amandeep Singh in the meantime, Jagjit Singh reached our home from Mukerian.

8. That after this incident, we were worried about Amandeep Singh because his life was in danger and local police was not helping us, infact they were threatening us that they will indulge the Amandeep Singh in false case if we will give any complaint against the workers of the ruling party. Thereafter, we decided to send Amandeep Singh abroad and on 10 January 2016, we sent Amandeep Singh to America with the help of one agent.

...Deponent

**Verification:-**
Verified that the contents of the above affidavit are true and correct to the best of knowledge and nothing has been concealed therein.
Verified at Jalandhar on

...Deponent

TARSEM SINGH
Advocate
Enrolment No. P/2377/07
Ch. No. 401, New Courts, Jal.

This is the true translation
of attached Punjabi Downi

3508
01/05/17   Amarjit Kaur wife S. Hardeep Singh
R/o Dist.

VALID OUTSIDE INDIA

ਹਲਫ਼ੀਆ ਬਿਆਨ

ਬਿਆਨ ਅਕਾਲੀ ਅਮਰਜੀਤ ਕੌਰ ਪਤਨੀ ਸਰਦਾਰ, ਹਰਦੀਪ ਸਿੰਘ, ਉਮਰ 63 ਸਾਲ ਵਾਸੀ ਮਕਾਨ ਨੰਬਰ 36, ਸੂਰਤ ਲਾਜੋਰ ਸ਼ਿਿੰਦੋਂ ਰੋਡ ਮਕਸੂਦਾਂ ਤੁਹਿਸ਼ੀਲ ਤੇ ਜ਼ਿਲਾ ਜਲੰਧਰ।

1) ਮੇਰਾ ਪਤੀ ਹਰਦੀਪ ਸਿੰਘ ਅੱਜ ਤੋਂ 30 ਸਾਲ ਪਹਿਲਾਂ ਇੰਡ ਦੀ ਮੌਜੂਦਾ ਸਰਕਾਰ ਤੋਂ ਸਾਲ ਬਚਾ ਕੇ ਅਮਰੀਕਾ ਚਲੇ ਗਏ ਸੀ ਅਤੇ ਅੱਜ ਕੱਲ ਉੱਥੇ ਹੀ ਰਹਿ ਰਹੇ ਹਨ।

2) ਇਹ ਕਿ ਮੇਰੇ ਵੱਡੇ ਲੜਕੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨੇ 5. ਮਈ 2014 ਨੂੰ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਜੁਆਇਨ ਕੀਤੀ ਸੀ ਅਤੇ ਪਾਰਟੀ ਦਾ ਮੈਂਬਰ ਹੋਣ ਦੇ ਨਾਤੇ ਉਹ ਗਰੀਬ ਇੰਨਸਾਨ, ਗਰੀਬ ਲੜਕੀਆਂ ਦੀ ਸ਼ਾਂਦੀ ਵਿਚ ਮੱਦਦ ਕਰਦਾ ਸੀ। ਗਰੀਬਾਂ ਅਤੇ ਨੌਜਵਾਨਾਂ ਨੂੰ ਸਿੱਖੀ ਨਾਲ ਜੋੜਦਾ ਸੀ ਅਤੇ ਨਸ਼ਾ ਛੁਡਾਊ ਕੈਂਪਾਂ ਵਿਚ ਨੌਜਵਾਨਾਂ ਦੇ ਨਸ਼ਿਆਂ ਨੂੰ ਛੁਡਕ ਵਿਚ ਵੀ ਉੱਥਨਾ ਦੀ ਸਹਾਇਤਾ ਕਰਦਾ ਸੀ।

3) ਇਹ ਕਿ 17 ਅਕਤੂਬਰ 2015 ਨੂੰ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਵਲੋਂ ਗਰੀਬ ਲੜਕੀਆਂ ਦੀ ਸ਼ਾਦੀ ਕਰਵਾਉਣ ਲਈ ਸਮਾਗਮ ਗੁਰਦੁਆਰੇ ਵਿਚ ਪ੍ਰਬੰਧ ਕੀਤਾ ਸੀ। ਮੇਰਾ ਲੜਕਾ ਅਮਨਦੀਪ ਸਿੰਘ ਉੱਸ ਸ਼ਾਦੀ ਵਿਚ ਹੋ ਰਹੇ ਸਾਰੇ ਪ੍ਰਬੰਧ ਨੂੰ ਦੇਖ ਰਿਹਾ ਸੀ। ਪ੍ਰੋਗਰਾਮ ਖਤਮ ਹੋਣ ਤੋਂ ਬਾਅਦ ਜਦ ਮੇਰਾ ਲੜਕਾ ਘਰ ਵਾਪਸ ਆ ਰਿਹਾ ਸੀ ਤਾਂ ਉਸ ਨੂੰ ਚਾਰ ਬੰਦਿਆਂ ਨੇ ਘੇਰ ਲਿਆ ਜੋ ਕਿ ਅਕਾਲੀ ਦਲ (ਬਾਦਲ) ਅਤੇ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੇ ਵਰਕਰ ਸਨ। ਉਹਨਾਂ ਨੇ ਮੇਰੇ ਲੜਕੇ ਨੂੰ ਕਿਹਾ ਕਿ ਉਹ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਲਈ ਕੰਮ ਨਾ ਕਰੇ ਅਤੇ ਉਸ ਨੂੰ ਨਸ਼ੇ ਵੇਚ ਕੇ ਪੈਸੇ ਬਣਾਉਣ ਲਈ ਕਿਹਾ ਅਤੇ ਇਸ ਦੇ ਬਦਲੇ ਵਿਚ ਹਰ ਤਰ੍ਹਾਂ ਦੀ ਜ਼ਰੂਰਤ ਪੂਰੀਆਂ ਕਰਵਾਉਣ ਦੀ ਗੱਲ ਕਹੀ। ਮੇਰੇ ਲੜਕੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨੇ ਉਹਨਾਂ ਨੂੰ ਆਪਣੀ ਪਾਰਟੀ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਨੂੰ ਛੱਡਣ ਅਤੇ ਉਹਨਾਂ ਦੇ ਗਲਤ ਕਾਰੋਬਾਰ ਨੂੰ ਕਰਨ ਤੋਂ ਸਾਫ ਇਨਕਾਰ ਕਰ ਦਿੱਤਾ ਜਿਸ ਤੇ ਉਹਨਾਂ ਨੇ ਮੇਰੇ ਲੜਕੇ ਨੂੰ ਕੁੱਟਣ ਤੇ ਘਸੂੰਨ ਮੁੱਕੀ ਮਾਰੇ ਤੇ ਗਾਲੀ ਗਲੋਚ ਕਰਨ ਤੋਂ ਬਾਅਦ ਜਾਨ ਤੋਂ ਮਾਰਨ ਦੀ ਧਮਕੀ ਦਿੱਤੀ। ਉਹਨਾਂ ਨੇ ਜਾਂ ਲੱਗਿਆ ਦੀ ਬਿਆਨ ਦਿੱਤਾ ਕਿ ਮੇਰਾ ਲੜਕਾ ਆਪਣੀ ਪਾਰਟੀ ਨੂੰ ਛੱਡ ਦੇਵੇ।

4) ਇਹ ਕਿ ਇਸ ਘਟਨਾ ਤੋਂ ਬਾਅਦ ਅਸੀਂ ਪੁਲਿਸ ਸਟੇਸ਼ਨ ਸ਼ਿਕਾਇਤ ਕਰਨ ਲਈ ਗਏ ਅਤੇ ਅਸੀਂ ਪੁਲਿਸ ਨੂੰ ਉਹਨਾਂ ਵਿਅਕਤੀਆਂ ਦੇ ਨਾਮ ਦੱਸੇ ਅਤੇ ਇਹ ਵੀ ਦੱਸਿਆ ਕਿ ਉਹ ਬਾਦਲ ਜਨਤਾ ਪਾਰਟੀ ਅਕਾਲੀ ਦਲ (ਬਾਦਲ) ਦੇ ਵਰਕਰ ਸਨ ਪਰੰਤੂ ਪੁਲਿਸ ਨੇ ਵੀ ਸਾਡੀ ਗੱਲ ਨਾ ਸੁਣੀ ਅਤੇ ਉਹਨਾਂ ਨੇ ਸਾਨੂੰ ਡੰਡਾ ਲੈ ਲਿਆ ਅਤੇ ਕੇਸ ਸਾਨੂੰ ਆਪਣੀ ਸ਼ਿਕਾਇਤ ਵਾਪਿਸ ਲੈਣ ਲਈ ਕਿਹਾ। ਉਹਨਾਂ ਨੇ ਇਹ ਵੀ ਕਿਹਾ ਕਿ ਇਹ ਸਭ ਅਕਾਲੀ ਦਲ (ਬਾਦਲ) ਅਤੇ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੀ ਪੰਜਾਬ ਵਿਚ ਸਾਂਝੀ ਸਰਕਾਰ ਹੈ ਅਤੇ ਇਸ ਲਈ ਸਾਡਾ ਉਹਨਾਂ ਵਿਰੁੱਧ ਸ਼ਿਕਾਇਤ ਕਰਨਾ ਠੀਕ ਨਹੀਂ। ਤੁਸੀਂ ਸ਼ਿਕਾਇਤ ਲਿਖ ਤਾ ਪੁਲਿਸ ਅਧਿਕਾਰੀਆਂ ਵਿਰੁੱਧਰ ਕਿਸਦ ਦੀ ਬਗਾਵਤ ਸਾਨੂੰ ਨਿਕਲ ਤਾ ਤਾਂ ਕੁਝ ਇਨਸਪੈ. ਅਧਿਕ ਅਤੇ ਸਭ ਤੋਂ ਸਾਡੇ ਪਾਸੋਂ ਸ਼ਿਕਾਇਤਕ ਲੈਂਡਕੇ, ਇਹ ਉਹਨਾਂ ਨੇ ਸਾਨੂੰ ਕਿਹਾ ਕਿ ਅਸੀਂ ਹੁਣੇ ਪੁਲਿਸ ਸਟੇਸ਼ਨ ਤੋਂ ਬਾਹਰ ਨਾ ਗਏ ਤਾਂ ਉਹ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਝੂਠੇ ਨਸ਼ੇ ਦੇ ਮੁਕਦਮਿਆ ਵਿਚ ਗ੍ਰਿਫ਼ਤਾਰ ਕਰਕੇ ਜੇਲ੍ਹਕ।

ਤੁਹਾਡ ਸੀ ਦੂ

Page 1 of 2

004

5) ਬਿਆ ਕਿ 20 ਦਸੰਬਰ 2015 ਨੂੰ ਜਦ ਸਾਰਾ ਲਾਂਢਾ ਲੋਕਾਂ ਪਿਲੰਦ ਜਾਬਰਕੁਲ ਕਰਨ ਲਈ ਆਪਣੀ ਪਾਰਟੀ ਦੂਸਕੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਦੀ 25 ਦਸੰਬਰ 2015 ਦੀ ਰੈਲੀ ਲਈ ਨੇੜਲੇ ਪਿੰਡਾਂ ਵਿੱਚ ਪੋਸਟਰ ਲਗਾ ਰਿਹਾ ਸੀ ਤਾਂ ਕੁਝ ਬੰਦਿਆਂ ਨੇ ਮੇਰੇ ਲੜਕੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਪਿੱਛੇ ਤੋਂ ਬੇਸਬਾਲ/ਬੈਟ ਨਾਲ ਹਮਲਾ ਕਰ ਦਿੱਤਾ ਅਤੇ ਉਹਨਾਂ ਵਿੱਚੋ ਇੱਕ ਨੇ ਉਸ ਦੀ ਪਿੱਠ ਤੇ ਵਾਰ ਕੀਤਾ। ਇੱਕ ਲੜਕਾ ਇੱਕ ਸਭ ਨੂੰ ਪਛਾਣਦਾ ਸੀ ਅਤੇ ਉਹ ਭਾਜਪਾ ਜਨਤਾ ਪਾਰਟੀ ਦੇ ਵਰਕਰ ਸਨ। ਉਹਨਾਂ ਸਾਰਿਆਂ ਦੇ ਕੁਝ ਵਿਚ ਉਹ ਸਨ ਅਤੇ ਉਹਨਾਂ ਨੇ ਮੇਰ ਲੜਕੇ ਦੇ ਲੱਕ, ਲੱਤਾਂ ਅਤੇ ਪਿੱਠ ਤੇ ਵਾਰ ਕੀਤੇ ਅਤੇ ਕਿਹਾ ਕਿ ਅਮਨਦੀਪ ਸਿੰਘ ਤੂੰ ਸਾਨੂੰ ਪਾਰਟੀ ਨੂੰ ਜਾ ਭੰਡ ਕੇ ਸਾਰੀ ਗੱਲ ਨਹੀਂ। ਮੈਂਥੀ ਆਪਾਂ ਤੈਨੂੰ ਜਾਨ ਤੋਂ ਮਾਰ ਦੇਵਾਂਗੇ। ਉਹ ਬਚਰਦ ਨਾਲ ਕਰਦਾ ਰਿਹਾ ਸੀ ਪਰ ਉਹਨਾਂ ਤੋਂ ਮੇਰੇ ਲੜਕੇ ਦੀ ਚਰਚ ਜਾ ਕੌਣੀ ਅਸਰਦ ਨਾ ਹੋਇਆ ਅਤੇ ਉਹ ਲਗਾਤਾਰ ਉਸਨੂੰ ਮਾਰਦੇ ਰਹੇ ਅਤੇ ਅੰਬੀਰ ਵਿੱਚ ਬੇਹੋਸ਼ੀ ਦੀ ਹਾਲਤ ਵਿੱਚ ਉਸ ਨੂੰ ਮਰਿਆ ਸਮਝ ਕੇ ਉਸ ਨੂੰ ਉਥੇ ਹੀ ਛੱਡ ਕੇ ਚਲੇ ਗਏ। ਜਦ ਰਾਸਤੇ ਜਾਂਦੇ ਰਾਹੀਗੀਰਾਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ਬੇਹੋਸ਼ੀ ਦੀ ਹਾਲਤ ਵਿੱਚ ਦੁੱਖਿਆ ਤਾਂ ਉਹਨਾਂ ਵਿੱਚੋ ਹੀ ਕਿਸੇ ਸਾਨੂੰ ਫੋਨ ਤੇ ਕਿਸ ਹਾਦਸੇ ਬਾਰੇ ਸੂਚਿਤ ਕੀਤਾ। ਜਦ ਸਾਨੂੰ ਇਸ ਬਾਰੇ ਪਤਾ ਚੱਲਿਆ ਤਾਂ ਮੈਂ ਆਪਣੇ ਗੁਆਂਢੀ ਪ੍ਰੇਮ ਸਿੰਘ ਨੂੰ ਬੁਲਾਇਆ ਅਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਦੁੱਖਣ ਨੂੰ ਬੁਰੇਰੀਆਂ ਨੂੰ ਫੋਨ ਤੇ ਇਸ ਹਾਦਸੇ ਦੀ ਜਾਣਕਾਰੀ ਦਿੱਤੀ। ਭੇ ਅਸੀਂ ਅਮਨਦੀਪ ਨੂੰ ਮੈੱਡ ਲਈ ਜਾਣ ਲੱਗੇ ਤਾਂ ਇੱਕ ਦੇਰ ਨੂੰ ਅਮਨਦੀਪ ਰਾਹੀਗੀਰਾਂ ਦੀ ਮੈੱਦਚ ਨਾਲ ਘਰ ਪੁੱਜਾ ਤਾਂ ਉਸ ਦੇ ਸਰੀਰ ਤੇ ਸੱਟਾਂ ਲੱਗਣ ਕਾਰਨ ਲਾਈ ਨੌਂਲਿਜ ਆ ਰਹੀ ਸੀ ਅਤੇ ਪਿੰਡ ਦੇ ਡਾਕਟਰ ਨੇ ਉਸ ਦਾ ਇਲਾਜ ਕੀਤਾ। ਇੱਕੇ ਸਮੇਂ ਨੂੰ ਜਗਜੀਤ ਸਿੰਘ ਵੀ ਸੂਬੇਰੀਆ ਤੋਂ ਆ ਗਏ।

6) ਇਹ ਕਿ ਇਸ ਵਿੱਚ ਘਟਨਾ ਤੋਂ ਬਾਅਦ ਸਾਨੂੰ ਅਮਨਦੀਪ ਦੀ ਕਾਫੀ ਫਿਕਰ ਹੋ ਗਈ ਸੀ ਕਿਉਂ ਕਿ ਉਸ ਦੀ ਜਾਨ ਨੂੰ ਖਤਰਾ ਸੀ ਅਤੇ ਪੁਲਿਸ ਵੀ ਸਾਥੀ ਕੋਈ ਮਦਦ ਨਹੀਂ ਕਰ ਰਹੀ ਸੀ ਅਤੇ ਉਲਟਾ ਗ੍ਰਿਫਤਾਰ ਕਰਨ ਦੇ ਮੇਰੇ ਲੜਕੇ ਨੂੰ ਹੀ ਹੋਰ ਝੂਠੇ ਮੁਕੱਦਮੇਂ ਵਿੱਚ ਫਸਾਉਣ ਦੀਆਂ ਧਮਕੀਆਂ ਦੇ ਰਹੀ ਸਨ ਇਸ ਲਈ ਅਸੀਂ ਆਪਣੇ ਲੜਕੇ ਨੂੰ ਵਿਦੇਸ਼ ਭੇਜਣ ਦਾ ਫੈਸਲਾ ਕੀਤਾ ਤਾਂ ਜੋ ਉਸ ਦੀ ਜਾਨ ਬਚ ਸਕੇ ਅਤੇ ਇੱਕ ਏਜੰਟ ਨੇ ਉਸ ਨੂੰ 10 ਜਨਵਰੀ 2016 ਨੂੰ ਅਮਰੀਕਾ ਭੇਜ ਦਿੱਤਾ।

ਬਿਆਨ ਕਰਤਾ

ਤਸਦੀਕ

ਤਸਦੀਕ ਕੀਤਾ ਜਾਂਦਾ ਹੈ ਕਿ ਇਸ ਹਲਫੀਆ ਬਿਆਨ ਵਿਚ ਦੱਸੀ ਸਾਰੀ ਗੱਲ ਸੱਚੇ ਹਨ ਅਤੇ ਮੇਰੀ ਜਾਣਕਾਰੀ ਅੰਨੁਸਾਰ ਦਰੁੱਸਤ ਹਨ। ਇਸ ਵਿੱਚ ਕੁਝ ਵੀ ਲੁਕਾਇਆ ਜਾਂ ਛੁਪਾਇਆ ਨਹੀਂ ਗਿਆ।

ਬਿਆਨ ਕਰਤਾ

**ATTESTED**

**1 MAY 2017**

Page 2 of 2

005

# AFFIDAVIT

I Charan Singh S/o S. Pal Singh R/o H. No. 67, Ravidass nagar, Jinda Road, Maqsudan, Tehsil and District Jalandhar do hereby solemnly affirm and declare as under:-

1. That I know Amandeep Singh S/o S. Hardeep Singh R/o H. No.36, Surat Nagar, Jinda Road, Maqsudan, Tehsil and District Jalandhar since long.

2. That I and father of Amandeep Singh studied together since our childhood and Hardeep Singh is living in America from last 30 years. Amandeep Singh joined Democratic political party Shiromani Akali Dal Amritsar (Maan) because this party was fighting for the rights of Sikh.

3. That on 20 December 2015, when Amandeep Singh was pasting the Pamphlets in near vilalges against the drugs on behalf of his party regarding the rally of his party on 25 December 2015, suddenly 5 persons from Akali Dal (Badal) and Bharti Janta Party attacked on Amandeep Singh and one out of them attacked him on his back. Amandeep Singh identified one of them, as he was the worker of Bharti Janta Party. Mother of Amandeep Singh called me and told me regarding the attack on Amandeep Singh. She also told me that earlier also on 17th October 2015 some persons attacked Amandeep Singh.

4. That I and mother of Amandeep Singh alongwith Amandeep Singh complained about the matter to local police but police under the political pressure of ruling party, threatened Amandeep

Singh to indulge him in false cases and refused to take the complaint.

5. Thereafter, the mother of Amandeep Singh was worried about the life of Amandeep Singh and after the advice of family, friends and relatives they sent Amandeep Singh abroad so that his life may be saved.

...Deponent

Verification:-

Verified that the contents of the above affidavit are true and correct to the best of knowledge and nothing has been concealed therein.

Verified at Jalandhar on

This is the true translation of attached Punjabi Document

...Deponent

TARSEM SINGH
Advocate
Enrolment No. P/2317/07
Ch. No. 401, New Courts, Jal.

ਚਰਨ ਸਿੰਘ ਤੇ ਰਾਜ ਸਿੰਘ
R/o ਜੰਮੂ ਜੀ

**VALID OUTSIDE INDIA**

ਬਿਆਨ ਕੀਤਾ ਕਿ ਚਰਨ ਸਿੰਘ ਪੁੱਤਰ ਸ: ਪਾਲ ਸਿੰਘ ਵਾਸੀ ਅਮਰਨ ਤੁੰਬਰ ਉਨ੍ਹਾਂ ਦਰਮਿਆਨ ਹੋਈ ...ਮਨਜ਼ੂਰ, ਤਹਿਸੀਲ ਤੇ ਜ਼ਿਲ੍ਹਾ ...ਦੇ ਅਨੁਸਾਰ ਬਿਆਨ ਤਹਿਰੀਰ ਹੈ।

1) ਇਹ ਕਿ ਮੈਂ ਅਮਨਦੀਪ ਸਿੰਘ ਪੁੱਤਰ ਸ: ਹਰਦੀਪ ਸਿੰਘ ਵਾਸੀ ਅਮਰਨ ਤੁੰਬਰ ... ਜ਼ਿਲ੍ਹਾ ...ਮਨਜ਼ੂਰ, ਤਹਿਸੀਲ ਤੇ ਜ਼ਿਲ੍ਹਾ ...ਨੂੰ ਪਿਛਲੇ ਕਾਫ਼ੀ ਸਮੇਂ ਤੋਂ ਜਾਣਦਾ ਹਾਂ।

2) ਇਹ ਕਿ ਮੇਰੇ ਅਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਪੁੱਤਰ ਗੁਰਦੀਪ ਸਿੰਘ ...ਪੂਰੀ ... ਅਮਨ ਦੇ ਅਧਿਕਾਰ ਅਧੀਨ ਲਿਆ ...ਅਮਨਦੀਪ ਸਿੰਘ ਨੇ ...ਗੁਰਦੀਪ ... ... ... ... ... ਚਲ (ਅਚਲ) ਅਧਿਕਾਰ ਹਾਸਲ ... ... ... ... ... ... ... ... ... ...ਦਾ ਕੀਤਾ ਸਾਬਤ ਹੈ।

3) ਇਹ ਕਿ 20 ਦਸੰਬਰ 2015 ਨੂੰ ਅਮਨਦੀਪ ਸਿੰਘ ਨਾਲਿਆ ਖਿਲਾਫ਼ ...ਪ੍ਰਾਪਰਟੀ ...ਅਸਾਲੀ ਚਲ (ਅਚਲ) ਅਧਿਕਾਰ ਦੀ 25 ਦਸੰਬਰ 2015 ਦੀ ... ... ... ... ਸੰਦਰਭ ... ...ਸੀ ਤਾਂ 3 ਬੰਦਿਆਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਪਿੱਛੇ ਦੋ ...ਕਰ ਦਿੱਤਾ ਅਤੇ ਉਨ੍ਹਾਂ ਇਸਦੇ ਇਲਜ਼ ਨੂੰ ... ...ਤੇ ਭਾਰੇ ਕੀਤਾ। ਅਮਨਦੀਪ ਸਿੰਘ ਇਕ ਸਾਲੇ ਨੂੰ ...ਅਤੇ ਦੋ ...ਸੰਘਣਾ ਆਪਣੀ ...ਦੇ ...ਸੀ। ਇਸ ਹਾਲਤ ਅੰਦਰ ...ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ...ਤਾਂ ...ਅਤੇ ਦਿੱਤਾ ਕੇ ... ਕਿ 17 ਅਕਤੂਬਰ 2015 ਨੂੰ ਵੀ ਅਮਨਦੀਪ ਸਿੰਘ ਤੇ ਕੁਝ ...ਨੇ ਹਮਲਾ ਕਰ ਦਿੱਤਾ ਸੀ।

4) ਇਹ ਕਿ ਮੈਂ ਅਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮਾਤਾ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ...ਦੇ ਕੇ ਲੋਕਲ ਪੁਲਿਸ ਨੂੰ ...ਅਧੀਨ ਪਰ ਪੁਲਿਸ ਨੇ ਮੌਜੂਦਾ ਪੁਲਿਸ ਨੇ ...ਪਾਰਟੀ ਦੇ ...ਵਿਚ ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ਝੂਠ ...ਵਿਚ ਫਸਾਉਣ ...ਦਿੱਤਾ ਅਤੇ ...ਲੈਟ ਤੋਂ ...ਇਨਕਾਰ ਕਰ ਦਿੱਤਾ।

5) ਇਹ ਕਿ ਇਸ ਘਟਨਾ ਤੋਂ ...ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮਾਤਾ ਆਪਣੇ ਪੁੱਤਰ ਦੀ ਜ਼ਿੰਦਗੀ ਪ੍ਰਤੀ ...ਹੋ ਗਈ। ਅਤੇ ਪਰਿਵਾਰ, ਦੇਸ਼ਾਂ, ਨਜ਼ਦੀਕੀ ...ਨਾਲ ਸਲਾਹ ਮਸ਼ਵਰੇ ਤੋਂ ...ਸਾਂ ਜੋ ਉਸ ਨੂੰ ... ਦੇ ਰਾਹੀਂ ਅਮਰੀਕਾ ਭੇਜ ਦਿੱਤਾ ਤਾਂ ਜੋ ਉਸ ਦੀ ਜ਼ਿੰਦਗੀ ਬਚ ਸਕੇ।

ਬਿਆਨ ਕਰਤਾ

**ਤਸਦੀਕ**

ਤਸਦੀਕ ਕੀਤਾ ਜਾਂਦਾ ਹੈ ਕਿ ਇਸ ਹਲਫ਼ੀਆ ਬਿਆਨ ਵਿਚ ਦੱਸੇ ਸਾਰੇ ਤੱਥ ਸਹੀ ਹਨ ਅਤੇ ਮੇਰੀ ਜਾਣਕਾਰੀ ਅਨੁਸਾਰ ਦਰੁਸਤ ਹਨ। ਇਸ ਵਿਚ ਕੋਈ ਲੁਕਾਇਆ ਜਾਂ ਛੁਪਾਇਆ ਨਹੀਂ ਗਿਆ।

ਬਿਆਨ ਕਰਤਾ

**ATTESTED**

NOTARY JALANDHAR (PB.) INDIA

Page 3 of 4

= 1 MAY 2017

# AFFIDAVIT

I Jagjit Singh S/o S. Dhian Singh aged 50 years, R/o Mohalla Tikhonal, Dr. Daljit Singh wali gali, Tehsil Mukerian, District Hoshiarpur do hereby solemnly affirm and declare as under:-

1. That I know Amandeep Singh S/o S. Hardeep Singh R/o H. No.36, Surat Nagar, Jinda Road, Maqsudan, Tehsil and District Jalandhar for long time.

2. That the father of Amandeep Singh i.e. Hardeep Singh who is my brother in law and is living in America from last 30 years. Amandeep Singh joined public and political party Shiromani Akali Dal (Maan) Amritsar on 5 May 2014, because this party fights for the rights of Sikhism.

3. That on 20 December 2015, when Amandeep Singh was pasting the Pamphlets against the drugs on behalf of his party regarding the rally of his party on 25 December 2015 in near villages, suddenly 5 persons from Akali Dal (Badal) and Bharti Janta Party attacked on Amandeep Singh and one out of them attacked from his backside.

4. That mother of Amandeep Singh called me and told me about the second attack on Amandeep Singh and I came to Jalandhar because prior to this, on 17 October 2015 workers of Bharti Janta Party attacked Amandeep Singh.

5. That I and mother of Amandeep Singh alongwith Amandeep Singh complained about the matter to local police but police under the political pressure of ruling party, threatened Amandeep

TARSEM SINGH
Advocate
Enrolment No. P/2377/07
Ch. No. 401, New Courts, Jal.

009

Singh to indulge him in false cases and refused to take the complaint.

6. Thereafter, the mother of Amandeep Singh was worried about the life of Amandeep Singh and after the advice of family, friends and relatives they sent Amandeep Singh on 10 January 2016 abroad so that his life will be saved.

...Deponent

Verification:-

Verified that the contents of the above affidavit are true and correct to the best of knowledge and nothing has been concealed therein.

Verified at Jalandhar on

...Deponent

This is the true translation of attached Punjabi Document

Singh

TARSEM SINGH
Advocate
Enrolment No. P/2377/07
Ch. No. 401, New Courts, Jal.



ਹਲਫੀਆ ਬਿਆਨ

ਬਿਆਨ ਆਜਾਦੇ ਜਰਮੀਤ ਸਿੰਘ ਪੁੱਤਰ ਸ: ਦਿਆਲ ਸਿੰਘ, ਉਮਰ 60 ਸਾਲ, ਵਾਸੀ ਮੁਹੱਲਾ ਵਿਚੋਵਾਲ, ਡਾ: ਦਲਜੀਤ ਸਿੰਘ ਵਾਲੀ ਗਲੀ, ਤਹਿਸੀਲ ਮੁਕੇਰੀਆਂ ਜਿਲ੍ਹਾ ਹੁਸ਼ਿਆਰਪੁਰ।

1)  ਇਹ ਕਿ ਮੈਂ ਅਮਨਦੀਪ ਸਿੰਘ ਪੁੱਤਰ ਸਿੰਘ ਹਰਦੀਪ ਸਿੰਘ ਵਾਸੀ ਮਕਾਨ ਨੰਬਰ 36 ਸ਼ੁਰਤ ਨਗਰ, ਸਿੱਧੂ ਰੋਡ ਮਕਸੂਦਾਂ, ਰਹਿਸੀਲ ਤੇ ਜਿਲ੍ਹਾ ਜਲੰਧਰ ਨੂੰ ਪਿਛਲੇ ਸਾਲ ਤੋਂ ਜਾਣਦਾ ਹਾਂ।

2)  ਇਹ ਕਿ ਅਮਨਦੀਪ ਦੇ ਪਿਤਾ ਹਰਦੀਪ ਸਿੰਘ ਜੋ ਕਿ ਮੇਰਾ ਸਾਲਾ ਹੈ ਅਤੇ ਪਿਛਲੇ 30 ਸਾਲ ਤੋਂ ਅਮਰੀਕਾ ਰਹਿ ਰਹੇ ਹੋਣ। ਇਸ ਲਈ ਅਮਨਦੀਪ ਸਿੰਘ ਨੇ 5 ਮਈ 2014 ਲੋਕਤਾਂਤ੍ਰਿਕ ਅਤੇ ਰਾਜਨੀਤਿਕ ਮਾਰਚੀ ਸ਼ੌਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਦੁਆਇਨ ਕੀਤਾ ਸੀ ਕਿਉਂਕਿ ਇਹ ਪਾਰਟੀ ਸਿੱਖਾਂ ਦੇ ਬੁਨਿਆਦੀ ਹੱਕਾਂ ਲਈ ਸੰਘਰਸ਼ ਕਰਦੀ ਹੈ।

3)  ਇਹ ਕਿ 20 ਦਸੰਬਰ 2015 ਨੂੰ ਅਮਨਦੀਪ ਸਿੰਘ ਨਹਿਰਾਂ ਖਿਲਾਫ ਜਾਗਰੂਕ ਕਰਨ ਲਈ ਆਪਣੀ ਪਾਰਟੀ ਸ਼ੌਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਵੱਲੋਂ 25 ਦਸੰਬਰ 2015 ਦੀ ਰੈਲੀ ਲਈ ਨੇੜਲੇ ਪਿੰਡਾਂ ਵਿਚ ਪੋਸਟਰ ਲਗਾ ਰਿਹਾ ਸੀ ਤਾਂ ਅਕਾਲੀ ਦਲ (ਬਾਦਲ) ਅਤੇ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੇ 5 ਬੰਦਿਆਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਪਿੱਛੇ ਤੋਂ ਹਮਲਾ ਕਰ ਦਿੱਤਾ ਅਤੇ ਉਹਨਾਂ ਵਿਚੋਂ ਇੱਕ ਨੇ ਉਸ ਦੀ ਪਿੱਠ ਤੇ ਵਾਰ ਕੀਤਾ।

4)  ਇਹ ਕਿ ਮੈਨੂੰ ਜਲੰਧਰ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮਾਤਾ ਦਾ ਫੋਨ ਆਇਆ ਅਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਦੁਬਾਰਾ ਹੋਏ ਹਾਦਸੇ ਬਾਰੇ ਦੱਸਿਆ ਤੇ ਮੈਂ ਉਸ ਸਮੇਂ ਜਲੰਧਰ ਗਿਆ ਸੀ ਕਿਉਂਕਿ ਇਸ ਤੋਂ ਪਹਿਲਾਂ ਵੀ 17 ਅਕਤੂਬਰ 2015 ਨੂੰ ਅਮਨਦੀਪ ਸਿੰਘ ਤੇ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੇ ਵਰਕਰਾਂ ਨੇ ਹਮਲਾ ਕੀਤਾ ਸੀ।

5)  ਇਹ ਕਿ ਮੈਂ ਅਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮਾਤਾ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ਨਾਲ ਲੈ ਕੇ ਲੋਕਲ ਪੁਲਿਸ ਨੂੰ ਸ਼ਿਕਾਇਤ ਕੀਤੀ ਪਰ ਪੁਲਿਸ ਨੇ ਸੱਤਾਧਾਰੀ ਪੁਲਿਸ ਨੇ ਸ਼ਾਸਕ ਪਾਰਟੀ ਦੇ ਦਬਾਵ ਵਿਚ ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ਝੂਠੇ ਮੁਕੱਦਮਿਆਂ ਵਿਚ ਫਸਾਉਣ ਦੀਆਂ ਧਮਕੀਆਂ ਇੰਤਜਾਰ ਅਤੇ ਸ਼ਿਕਾਇਤ ਲੈਣ ਤੋਂ ਸਾਫ ਇਨਕਾਰ ਕਰ ਦਿੱਤਾ।

6)  ਇਹ ਕਿ ਇਸ ਘਟਨਾ ਤੋਂ ਬਾਅਦ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮਾਤਾ ਆਪਣੇ ਪੁੱਤਰ ਦੀ ਜਿੰਦਗੀ ਪੂਰੀ ਫਿਕਰਮੰਦ ਹੋ ਰਹੀ ਅਤੇ ਪਰਿਵਾਰ, ਦੋਸਤਾਂ, ਨਜਦੀਕੀ ਰਿਸ਼ਤੇਦਾਰਾਂ ਨਾਲ ਸਲਾਹ ਮਸ਼ਵਰੇ ਤੋਂ ਬਾਅਦ ਸਭ ਨੇ ਉਸ ਨੂੰ ਏਜੰਟ ਦੇ ਰਾਹੀਂ 10 ਜਨਵਰੀ 2016 ਨੂੰ ਅਮਰੀਕਾ ਭੇਜ ਦਿੱਤਾ ਤਾਂ ਜੋ ਉਸ ਦੀ ਜ਼ਿੰਦਗੀ ਬਚ ਸਕੇ।

ਬਿਆਨ ਕਰਤਾ

ਤਸਦੀਕ

ਤਸਦੀਕ ਕੀਤਾ ਜਾਂਦਾ ਹੈ ਕਿ ਇਸ ਹਲਫੀਆ ਬਿਆਨ ਵਿਚ ਦੱਸੇ ਸਾਰੇ ਤੱਥ ਸੱਚੇ ਹਨ ਅਤੇ ਮੇਰੀ ਜਾਣਕਾਰੀ ਅਨੁਸਾਰ ਦਰੁੱਸਤ ਹਨ। ਇਸ ਵਿਚ ਕੁਝ ਵੀ ਲੁਕਾਇਆ ਜਾਂ ਝੂਠ ਦੱਸਿਆ ਨਹੀਂ ਗਿਆ।

ਬਿਆਨ ਕਰਤਾ

VALID FOR FOREIGN COUNTRY OUT OF INDIA EMBASSIES ETC.

NOTARY OF INDIA

Satinder Jit Singh
Distric Courts Complex
Jullundur

ATTESTED AS IDENTIFIED
NOTARY/Designa Hoshiarpur

2 8 APR 2017

AFFFIDAVIT

I Prem Singh S/o S. Swaran Singh R/o H. No. 12, Surat Nagar, Jinda Road, Maqsudan, District Jalandhar do hereby solemnly affirm and declare as under:-

1. That I know Amandeep Singh S/o S. Hardeep Singh R/o H. No. 16, Surat Nagar, Jinda Road, Maqsudan, Tehsil and District Jalandhar for last 15-16 years. Me and Amandeep Singh studied together since our childhood.

2. That Amandeep Singh has faith in Sikhism and he wants equality and justice to all. On 05 May 2014, he joined Democratic political party Shiromani Akali Dal Amritsar (Maan) because this party was fighting for the rights of Sikh. Amandeep Singh was beaten in India and also threatened to kill him because of his belief in Sikhism and for working for Shiromani Akali Dal Amritsar (Maan). Some of the persons attacked Amandeep Singh on 17 October 2015.

3. That on 20 December 2015, when Amandeep Singh was pasting the Pamphlets in near villages against the drugs on behalf of his party regarding the rally of his party on 25-12-2015, suddenly few persons attacked on Amandeep Singh from his backside, one of them gave blow on the back of Amandeep Singh. Amandeep Singh identified one of them, he was the worker of Bharti Janta Party. Thereafter, they all were carrying Baseball Bat in they hands and they started beating on Amandeep Singh on the leg, back, hip and they told Amandeep Singh that he has not left the Shiromani Akali Dal Amritsar (Maan) party and

not even care for their warning, now they will kill Amandeep Singh. Amandeep Singh was crying with the pain but they did not bother about the pain of Amandeep Singh and continued beating him and left him in unconscious state, presuming him to be dead. Mother of Amandeep Singh called me and told about the attack on Amandeep Singh when we were going to take Amandeep Singh, he reached home and his body was swollen due to the beatings. The doctor of the village gave first aid.

4. Thereafter, the mother of Amandeep Singh was worried about the life of Amandeep Singh and after the advice of family, friends and relatives they sent Amandeep Singh abroad so that his life will be saved.

...Deponent

Verification:-

Verified that the contents of the above affidavit are true and correct to the best of knowledge and nothing has been concealed therein.

Verified at Jalandhar on

...Deponent

This is the true translation
of attached Punjab Document

TARSEM SINGH
Advocate
Enrolment No. P/2377/07
Ph. No. 401, New Courts, Jal.

VALID OUTSIDE INDIA

ਹਲਫੀਆ ਬਿਆਨ

ਬਿਆਨ ਅਤਾਈ ਪ੍ਰੇਮ ਸਿੰਘ ਪੁੱਤਰ ਸ: ਸਵਰਨ ਸਿੰਘ, ਵਾਸੀ ਮਕਾਨ ਨੰਬਰ 12, ਸੂਰਜ ਨਗਰ, ਸ਼ਿੰਦਾ ਰੋਡ ਮਕਸੂਦਾਂ, ਤਹਿਸੀਲ ਤੇ ਜਿਲ੍ਹਾ ਜਲੰਧਰ।

1)  ਦਿੱਤਾ ਕਿ ਮੈਂ ਅਮਨਦੀਪ ਸਿੰਘ ਪੁੱਤਰ ਸ: ਕੁਲਦੀਪ ਸਿੰਘ ਵਾਸੀ ਮਕਾਨ ਨੰਬਰ 36 ਸੂਰਜ ਨਗਰ, ਸ਼ਿੰਦਾ ਰੋਡ ਮਕਸੂਦਾਂ, ਤਹਿਸੀਲ ਤੇ ਜਿਲ੍ਹਾ ਜਲੰਧਰ ਨੂੰ ਪਿਛਲੇ 15-16 ਸਾਲ ਤੋਂ ਜਾਣਦਾ ਹਾਂ। ਮੈਂ ਤੇ ਅਮਨਦੀਪ ਸਿੰਘ ਨਾਲ ਲਗਦੀਆਂ ਟਾਕੀਆਂ ਤੇ ਇਕੱਠੇ ਪੜੇ ਹਾਂ।

2)  ਇਹ ਕਿ ਅਮਨਦੀਪ ਸਿੰਘ ਦਾ ਸਿੱਖ ਪੰਥ ਵਿੱਚ ਵਿਸ਼ਵਾਸ ਹੈ ਅਤੇ ਉਹ ਹਰ ਇੱਕ ਲਈ ਨਿਆਂ ਅਤੇ ਬਰਾਬਰੀ ਚਾਹੁੰਦਾ ਹੈ। ਇਸ ਲਈ ਉਸ ਨੇ 5 ਮਈ 2014 ਨੂੰ ਲੋਕਤਾਂਤ੍ਰਿਕ ਅਤੇ ਰਾਜਨੀਤਕ ਪਾਰਟੀ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਜੁਆਇਨ ਕੀਤੀ ਸੀ ਕਿਉਂਕਿ ਇਹ ਪਾਰਟੀ ਸਿੱਖਾਂ ਦੇ ਬੁਨਿਆਦੀ ਹੱਕਾਂ ਲਈ ਸੰਘਰਸ਼ ਕਰਦੀ ਹੈ। ਅਮਨਦੀਪ ਸਿੰਘ ਨੂੰ ਉਸ ਦੇ ਧਾਰਮਿਕ ਵਿਸ਼ਵਾਸ ਅਤੇ ਰਾਜਨੀਤਿਕ ਪਾਰਟੀ ਲਈ ਕੰਮ ਕਰਨ ਕਰਕੇ ਭਾਰਤ ਵਿਚ ਮਾਰਿਆ ਕੁਟਿਆ ਗਿਆ ਅਤੇ ਉਸ ਨੂੰ ਜਾਨ ਤੋਂ ਮਾਰਨ ਦੀਆਂ ਧਮਕੀਆਂ ਦੀ ਚਿੰਤਾਵਾਂ ਗਈਆਂ। ਅਮਨਦੀਪ ਸਿੰਘ ਤੇ ਪਹਿਲਾਂ ਵੀ 17 ਅਕਤੂਬਰ 2015 ਨੂੰ ਉਪਰੋਕਤ ਵਿਅਕਤੀਆਂ ਨੇ ਹਮਲਾ ਕੀਤਾ ਸੀ।

3)  ਇਹ ਕਿ 20 ਦਸੰਬਰ 2015 ਨੂੰ ਅਮਨਦੀਪ ਸਿੰਘ ਨਾਜ਼ਿਆਂ ਵਿਰੁੱਧ ਜਾਗੂਰਕ ਕਰਨ ਲਈ ਆਪਣੀ ਪਾਰਟੀ ਸ਼੍ਰੋਮਣੀ ਅਕਾਲੀ ਦਲ (ਮਾਨ) ਅੰਮ੍ਰਿਤਸਰ ਦੀ 25 ਦਸੰਬਰ 2015 ਦੀ ਰੈਲੀ ਲਈ ਨੇੜਲੇ ਪਿੰਡਾਂ ਵਿਚ ਪੋਸਟਰ ਲਗਾ ਰਿਹਾ ਸੀ ਤਾਂ ਅਕਾਲੀ ਦਲ (ਬਾਦਲ) ਅਤੇ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੇ ਉਹਨਾਂ ਬੰਦਿਆਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਪਿੱਛੇ ਤੋਂ ਹਮਲਾ ਕਰ ਦਿੱਤਾ ਅਤੇ ਉਹਨਾਂ ਵਿਚੋਂ ਇੱਕ ਨੇ ਉਸ ਦੀ ਪਿੱਠ ਤੇ ਵਾਰ ਕੀਤਾ। ਅਮਨਦੀਪ ਸਿੰਘ ਸਿੱਖ ਜਥੇ ਨੂੰ ਪ੍ਰਭਾਵਸ ਸੀ ਅਤੇ ਉਹ ਭਾਰਤੀ ਜਨਤਾ ਪਾਰਟੀ ਦੇ ਵਰਕਰ ਸਨ। ਉਹਨਾਂ ਸਾਰਿਆਂ ਦੇ ਹੱਥ ਵਿਚ ਬੈਟ/ਬੇਸਬਾਲ ਸਨ ਅਤੇ ਉਹਨਾਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੇ ਸੱਕ, ਲੱਤਾਂ ਅਤੇ ਪਿੱਠ ਤੇ ਵਾਰ ਕੀਤੇ ਅਤੇ ਕਿਹਾ ਕਿ ਅਮਨਦੀਪ ਸਿੰਘ ਤੂੰ ਮਾਨ ਪਾਰਟੀ ਨੂੰ ਲਾ ਛੱਡ ਕੇ ਸਾਡੀ ਗੱਲ ਨਹੀਂ ਮੰਨੇ ਅਸੀਂ ਤੈਨੂੰ ਜਾਨ ਤੋਂ ਮਾਰ ਦੇਵਾਂਗੇ। ਉਹ ਬੁਰਦ ਨਾਲ ਬਚਾਵ ਕਰਦਾ ਸੀ, ਪਰ ਉਹਨਾਂ ਨੇ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਕਿਸੇ ਗੱਲ ਦੀ ਕੋਈ ਪਰਵਾਹ ਨਹੀਂ ਕੀਤੀ ਅਤੇ ਉਹ ਲਗਾਤਾਰ ਉਸ ਨੂੰ ਮਾਰਦੇ ਰਹੇ ਅਤੇ ਅਖੀਰ ਵਿੱਚ ਮਰਿਆ ਸਮਝ ਕੇ ਉਸ ਨੂੰ ਉੱਥੇ ਹੀ ਛੱਡ ਕੇ ਭੱਜ ਗਏ। ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮੈਂ ਤੇ ਮੇਰੇ ਭੁਲਾਇਆ ਅਤੇ ਸਾਰੀ ਘਟਨਾ ਬਾਰੇ ਦੱਸਿਆ। ਅਸੀਂ ਅਮਨਦੀਪ ਨੂੰ ਨੇੜੇ ਲਈ ਜਾਨ ਲਈ ਤਾਂ ਇਹ

Page 1 of 4

NOTARY
Surjeet Singh
Jalandhar Distt.
Punjab (India)
Regd. No. 3606
GOVT. OF INDIA

ਏ�venੂੰ ਅਮਨਦੀਪ ਰਿਸ਼ੀਗੀਰਾਂ ਦੀ ਸੰਦਰ ਨਾਲ ਧਾਰ ਪੁੱਜਾ ਤਾ ਉਸ ਦੇ ਸਰੀਰ ਦੇ ਸੱਟਾ    ਲੱਗਣ   ਕਾਰਨ   ਕਾਫੀ ਸੰਜਿਦ ਆ ਰਾਸ਼ੀ ਸੀ         ਅਤੇ ਪਿੰਡ ਦੇ ਡਾਕਟਰ ਨੇ ਉਸ ਦਾ ਇਲਾਜ ਕੀਤਾ।

4)    ਇਵ ਕਿ ਇਸ ਘਟਨਾ ਡੋ ਬਾਅਦ ਅਮਨਦੀਪ ਸਿੰਘ ਦੀ ਮੇਰਾ ਆਪਣੇ ਪੁੱਤਰ ਦੀ ਜ਼ਿੰਦਗੀ ਪੂਰੀ ਤਿਲਕਨੌਂ ਹੋ ਰਾਸ਼ੀ ਅਤੇ ਪਰਿਵਾਰਿਕ, ਦੋਸਤਾਂ, ਨੰਬਰਦੀਕੀ ਰਿਸ਼ਤੇਦਾਰਾਂ ਕੋਲ ਮਲਾਹ ਮੁੜਾਵਨੇ ਤੇ ਬਾਅਦ  ਅਸਾਂ ਨੇ ਉਸ ਨੂੰ ਵੇਸਟ ਦੇ ਰਾਹੀ ਅਮਰੀਕਾ ਭੇਜ ਦਿੱਤਾ ਤਾ ਜੋ ਓੁਸ ਦੀ ਜ਼ਿੰਦਗੀ ਬਚ ਸਕੇ।

ਬਿਆਨ ਕਰਤਾ

ਤਸਦੀਕ

ਤਸਦੀਕ ਕੀਤਾ ਜਾਂਦਾ ਹੈ ਕਿ ਇਸ ਹਲਫ਼ੀਆ ਬਿਆਨ ਵਿਚ ਦੱਸੇ ਸਾਰੇ ਤੱਥ ਸੱਚੋ ਹਨ ਅਤੇ ਮੇਰੀ  ਜਾਣਕਾਰੀ ਅਨੁਸਾਰ ਦਰੁੱਸਤ ਨ।ਇਸ ਝੂਠ ਦੀ ਲੁਕਾਇਆ ਜਾ ਦੁਪਾਇਆ ਨਹੀ ਗਿਆ।

ਬਿਆਨ ਕਰਤਾ

ATTESTED

NOTARY JAI ANDHAR (Pb.) IND.

— 1 MAY 2017

NOTARY
Surject Singh
Jalandhar Distt.
Punjab (India)
Regd. No.13008
(Exp. Date)

Page 2 of 4

015



ਸੁਖਜਿੰਦਰ ਸਿੰਘ ਕਾਜਮਪੁਰ
ਸੀਨੀਅਰ ਮੀਤ ਪ੍ਰਧਾਨ (ਕਿਸਾਨ ਵਿੰਗ)

ਪਿੰਡ ਕਾਜਮਪੁਰ, ਡਾਕ, ਕੰਡੀਲਾ
ਥਾਣਾ, ਬਟਾਲਾ, ਜਿਲ੍ਹਾ ਗੁਰਦਾਸਪੁਰ
ਪਿੰਨ ਕੋਡ-143419
ਪੰਜਾਬ (ਇੰਡੀਆ)
ਮੋਬਾਇਲ : +91-98140-48440, 94174-04451
E-mail : sukhjinderslghkhalsa@rediffmail.com

ਝੰਡ ਚੜ੍ਹਤਾਂ :
ਜਿਲ੍ਹਾ ਪ੍ਰ: ਹਰਦੇਵ ਸਿੰਘ
ਸ਼ਿਮਲਾ ਭਟਿੰਦਰ ਸੇਵੀਅਰ
ਪਿੰਨ ਕੋਡ-140406
ਪੰਜਾਬ (ਇੰਡੀਆ)
ਟੈਲੀ + ਫੈਕਸ : 0091-1763-233764
Web. : www.akalidalamritsar.net

Ref no. Kazam metsnvp /2017/...213        Date- 15/04/2017

I Sukhjinder singh Kazampur Senior Vice President ( Farmer wing ) and Executive Member (National) Shiromani Akali Dal Amritsar (Maan)

Certified that

1. I personally Know S. Amandeep singh S/o S. Hardeep singh and his family Residence of H.no 36, Surat Nagar Jinda Road , Maqsudan Jalandhar Punjab(INDIA) Now Residence in Chase Country Detection Centre Jail P.O BOX # 639 Cotton Wood Falls KS # 66845 (U.S.A) His case no. A#078-155-083 He and his family is permanent workers and supporter of Shiromani Akali Dal Amritsan(Maan) The Sikh political party which is Struggling ,Peacefully and Democratically for the freedom of the sikh peoples.

2. Amandeep singh while in India working for our party by pasting rally poster the supporters of ruling party of Badal and B.J.P oppose him to paste Rally posters on walls and beaten bitterly . When Amandeep singh went to police station Maqsudan to report for this incedent police refused to register the case under the pressure of ruling party Goverment and threaten to indulge Amandeep singh in fake criminal case.

3. Amandeep singh joint our party Shiromani Akali Dal Amritsar ( Maan) in May 2014 He was active party worker and actively join our parties every programme which were Organization .

4. If Amandeep singh return to India( theocratic Hindu Indian state ) he will be persecuted by the government of India. Amandeep singh can also be falsely in implicated in a criminal case and even eleminited in fake police encounter .

5. As such I would recommend that amandeep singh be given political asylum as per the justice and liberal laws of your country and in accordance with the U.N. charter .

6. Our party president does not do any work related to the party owing to his illhealth so new letter can not be issued upto two month advised bed rest by doctor.



C.S.T./P.S.T. No. 33344910
Dated 22-8-80

Trade Mark
SAMRAT & CHROMEX

TELE    : 0181-_____ 46/2064
Bankers: Punjab & Sind Bank
          State Bank of India

# SAMRAT SPORTS INDUSTRIES

SPECIALISTS IN :
"SAMRAT" Brand Shuttlecocks, Other Sports Goods Manufacturers & Suppliers

Near Inder Industries,
Basti Nau,
**JALANDHAR-144 002**
Dated..27|4|2017....

Ref. No....................

TO WHOM IT MAY CONCERN

IT IS CERTIFIED THAT WE ARE SELLING
SPORTS GOODS INCLUDING BASE BATS
SINCE JANUARY 2015 ONWARDS.

For Samrat Sports Industries

Partner





**019**

A 078 155 083

Singh, Amandeep

## PROOF OF SERVICE

On May 8, 2017 I, Christopher B. McKinney, served a copy of this Respondent's Documents in Support of Case and attached pages to the Office of Chief Counsel, Department of Homeland Security, 2345 Grand Blvd., Suite 500, Kansas City, MO 64108 by email.

Christopher B. McKinney

 **COPY**

U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Homeland Security Investigations
Forensic Laboratory

April 18, 2017

Laboratory Report
HSI-FL 17-00964
Page 1 of 3

Assistant Chief Counsel Kimberly Ann Burgess
U.S. Immigration and Customs Enforcement
2345 Grand Blvd.
Suite 500
Kansas City, MO 64108
816-391-7216

REF:    A078155083

EXHIBIT(S):

| | |
|---|---|
| 1.1 | Eleven page Shiromani Akali Dal letter from President S. Simranjit Singh Mann dated 6/27/2016 |
| 1.2 | One page affidavit by Paramjit Singh Tung (with translation dated 7/12/2016); and enlarged photocopy of California Commercial Driver License in the name of Paramjit Singh Tung issued 7/29/2014 |
| 1.3 | Five page affidavit by Amarjit Kaur dated 6/28/2016; and photocopy of four pages from Republic of India passport bearing number J0079024 in the name of Amarjit Kaur issued 8/13/2010 |
| 1.4 | Three page affidavit by Prem Singh dated 6/28/2016; and photocopy of Government of India E-Aadhaar Letter and Identification card bearing number 8708 5253 1451 in the name of Prem Singh |
| 1.5 | Three page affidavit by Charan Singh dated 6/28/2016; and photocopy of Government of India Identification card bearing number 8023 5699 6774 in the name of Charan Singh |
| 1.6 | Government of India Identity documents: |
| 1.6.1 | Indian Union Driving License bearing number PB-0820100325996 in the name of Amandeep Singh issued 3/2/2010 |
| 1.6.2 | Jalandhar Commissioner of Income Tax Permanent Account Number card bearing number ASHPS0047E in the name of Amandeep Singh |
| 1.6.3 | Government of India Identification card bearing number 7635 7601 3649 in the name of Amandeep Singh |
| 1.7 | Government of Punjab Birth Certificate bearing number 0449033 (with translation dated 3/30/2000) in the name of Amandeep Singh |

FINDING(S):

Physical, microscopic, instrumental, and comparative examinations of the above-described document(s) resulted in the following findings:

Due to the lack of a comparable genuine Shiromani Akali Dal letter standard on file in the laboratory's reference library, Exhibit 1.1 could not be authenticated by a comparative examination. Exhibit 1.1 was prepared using a readily available print technology (office machine utilizing toner). Each page contains an inked rubber stamp impression and no sophisticated security features (watermark, microprinting, ultraviolet security features, etc.). No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine affidavit standard on file in the laboratory's reference library, Exhibit 1.2 could not be authenticated by a comparative examination. Exhibit 1.2 was prepared using a readily available

Revision Number 0
Effective 06/10/2015

AN ASCLD/LAB-International ACCREDITED TESTING LABORATORY SINCE FEBRUARY 7, 2012
This report may only be reproduced in its entirety.



print technology (office machine utilizing toner). The translation contains inked rubber stamps and neither the affidavit nor translation have sophisticated security features (watermark, microprinting, ultraviolet security features, etc.). The California Commercial Driver License could not be authenticated because it is a photocopy. If available, the source document from which the photocopy was generated should be submitted to the laboratory for authentication. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine affidavit standard on file in the laboratory's reference library, Exhibit 1.3 could not be authenticated by a comparative examination. Exhibit 1.3 was prepared using a readily available print technology (office machine utilizing ink jet). Page 1 of the affidavit is commercially available revenue paper containing sophisticated security features (watermark, embedded thread, ultraviolet fluorescent security fibers, etc.); all remaining pages contain no sophisticated security features. Each page of Exhibit 1.3 contains the deponent's signature and an inked rubber stamp notary seal impression. Notary seals in Exhibits 1.3 through 1.5 are of common origin. The photocopied Indian passport pages could not be authenticated. If available, the source document from which the photocopies were generated should be submitted to the laboratory for authentication. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine affidavit standard on file in the laboratory's reference library, Exhibit 1.4 could not be authenticated by a comparative examination. Exhibit 1.4 was prepared using readily available print technologies (office machines utilizing ink jet on page 1 and toner on all remaining pages). Page 1 of the affidavit is commercially available revenue paper containing sophisticated security features (watermark, embedded thread, ultraviolet fluorescent security fibers, etc.); all remaining pages contain no sophisticated security features. Each page of Exhibit 1.4 contains the deponent's signature and an inked rubber stamp notary seal impression. Notary seals in Exhibits 1.3 through 1.5 are of common origin. The photocopied Government of India Identification card could not be authenticated. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine affidavit standard on file in the laboratory's reference library, Exhibit 1.5 could not be authenticated by a comparative examination. Exhibit 1.5 was prepared using readily available print technologies (office machines utilizing ink jet on page 1 and toner on all remaining pages). Page 1 of the affidavit is commercially available revenue paper containing sophisticated security features (watermark, embedded thread, ultraviolet fluorescent security fibers, etc.); all remaining pages contain no sophisticated security features. Each page of Exhibit 1.5 contains the deponent's signature and an inked rubber stamp notary seal impression. Notary seals in Exhibits 1.3 through 1.5 are of common origin. The photocopied Government of India Identification card could not be authenticated. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine Indian Union Driving License standard on file in the laboratory's reference library, Exhibit 1.6.1 could not be authenticated by a comparative examination. Exhibit 1.6.1 was prepared using a combination of printing processes including offset lithography, thermal mass transfer and dye-sublimation. Exhibit 1.6.1 contains an embedded security chip and microtext. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine Jalandhar Commissioner of Income Tax Permanent Account Number card standard on file in the laboratory's reference library, Exhibit 1.6.2 could not be authenticated by a comparative examination. Exhibit 1.6.2 was prepared using a readily available print technology (office machine utilizing ink jet). Exhibit 1.6.2 contains no security features (microprinting, ultraviolet security features, etc.). No physical evidence of data entry alteration was found.

Revision Number 6
Effective 06/10/2015

AN ASCLD/LAB-International ACCREDITED TESTING LABORATORY SINCE FEBRUARY 9, 2012
This report may only be reproduced in its entirety.



April 18, 2017

Laboratory Report
HSI-FL 17-00964
Page 3 of 3

Due to the lack of a comparable genuine Government of India Identification card standard on file in the laboratory's reference library, Exhibit 1.6.3 could not be authenticated by a comparative examination. Exhibit 1.6.3 was prepared using a readily available print technology (office machine utilizing ink jet). Exhibit 1.6.3 contains a Quick Response (QR) code which was readable with information corresponding to personalized information in the card; no additional security features are incorporated into the production of Exhibit 1.6.3. No physical evidence of data entry alteration was found.

Due to the lack of a comparable genuine Government of Punjab Birth Certificate standard on file in the laboratory's reference library, Exhibit 1.7 could not be authenticated by a comparative examination. Exhibit 1.7 was prepared using a combination of the offset lithography and letterpress printing processes, with ink pen handwritten personalized entries; the translation was prepared using an impact printer. Exhibit 1.7 contains no sophisticated security features (watermark, microprinting, ultraviolet security features, etc.). Exhibit 1.7 has one altered handwritten entry (an overwritten digit), and the translation has two overtyped entries. The significance of these alterations cannot be assessed.

REMARK(S):

The above referenced evidence was delivered to the laboratory on March 31, 2017 and will be returned by official courier.

Conclusions, opinions, and interpretations contained in the finding(s) section of this report are based upon the examination(s) of the evidence conducted by the undersigned examiner as specified.

Donna O. Eisenberg
Forensic Document Examiner

AN ASCLD/LAB-International ACCREDITED TESTING LABORATORY SINCE FEBRUARY 7, 2013
This report may only be reproduced in its entirety.



Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT – KANSAS CITY, MISSOURI

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| **SINGH, Amandeep** | ) | File No.  **A 078 155 083** |
| | ) | |
| In Removal Proceedings. | ) | |
| | ) | |

Immigration Judge Baker                              Next Hearing: None Scheduled


**RESPONDENT'S BRIEF**

A 078 155 083

Singh, Amandeep

## Background

On August 11, 2016, the Immigration Judge denied Mr. Singh's application for withholding of removal and for protection under the Convention Against Torture and ordered him removed to India. In the Oral Decision and Order of the Immigration Judge, the Judge found that Mr. Singh failed to meet his burden of proof but accepted his testimony and did not make an adverse credibility finding. Mr. Singh appealed to the Board of Immigration Appeals. The Board concluded that a remand was warranted regarding the contested issue of whether Mr. Singh presented sufficient corroborating evidence to satisfy his burden of proving his eligibility for withholding and protection under the CAT. Specifically, the board held that "a remand is warranted for more detailed findings of fact by the Immigration Judge, to include specific findings of fact with respect to the authenticity and truthfulness of any significant corroborating documents submitted by the applicant." At a hearing on March 22, 2017, the Immigration Judge allowed additional time for Mr. Singh to file corroborating documents.

On May 5, 2017, Mr. Singh filed additional corroborating documents. The same documents were refiled on May 8, 2017 due to the availability of higher-quality reproductions. The Department is in possession of the originals. The originals have been available since photocopies were filed on May 8, 2017. The Department was offered access to the originals on the same day. The original documents have been in the Department's possession since June 20, 2017. The documents filed include: new affidavits from Mr. Singh's mother, father, and friends; a letter from the Shiromani Akali Dal party; and a letter, receipt, and photos regarding baseball bat purchase in India.

## Foundational Objections

The Department contests the corroborating evidence only on foundational grounds. Specifically, the Department suggests that the corroborating evidence may not be properly authenticated because, for instance "the lack of chain of custody [...] brings the authenticity of those documents to question," and because the Forensic Document Lab results are inconclusive.

The Department's forensic lab is not the final arbiter of admissibility or evidential value. A document should not be afforded less weight only because the Department's lab cannot

1

A 078 155 083

Singh, Amandeep

authenticate the document. *See Zahedi v. INS*, 222 F.3d 1157, 1165 (9th Cir. 2000) (an ambiguous forensics lab determination can't be basis for proving a lack of credibility). There is no chain of custody requirement regarding documentation. Nevertheless, the Department was provided with the mailers used to ship the newly submitted documentation from India to the undersigned's office.

The affidavits provided by Mr. Singh are properly authenticated. Any evidence offered must be probative and its use must be fundamentally fair to guarantee due process of law. Although documentary evidence need not comply with the Federal Rules of Evidence, the Rules may provide strong support to the conclusion that the admission of evidence comports with due process. *Matter of Y-S-L-C-*, 26 I&N Dec. 688, 690 (BIA 2015). The affidavits filed by Mr. Sing would comport with Federal Rules of Evidence 902(8) as self-authenticating acknowledged documents.

### Corroboration

The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration. 8 C.F.R. § 1208.13(a). Pursuant to the REAL ID Act, the BIA requires an applicant to present corroboration of a claim even if the testimony is credible, unless corroboration is not reasonably available. *Matter of S-B-*, 24 I&N Dec. 42 (BIA 2006). The Immigration Judge should not require "strong" or "conclusive" corroborative evidence. *See Chawala v. Holder*, 599 F.3d 998, 1008 (9th Cir. 2010). The Eighth Circuit Court of Appeals requires that an Immigration Judge: 1) rule explicitly on the credibility of the applicant's testimony; 2) explain why it was reasonable to expect additional corroboration; 3) if necessary, assess the sufficiency of the applicant's explanations for the absence of corroborating evidence. *El-Sheikh v. Ashcroft*, 388 F.3d 643 (8th Cir. 2004).

Mr. Singh testified that he left India because he was attacked, on two occasions, by members of the BJP. Tr. at 14. On one of the occasions, Mr. Singh was attacked from behind, hit with a baseball bat, and beaten for about half an hour to the point of unconsciousness. *Id.* at 19. Although, Mr. Singh does not have medical records available from his visit to a doctor, he has provided affidavits corroborating his testimony as to the attacks and his injuries. Police reports should not be required because the police told Mr. Singh that they would not pursue charges against members of the BJP. *Id.* The police also threatened Mr. Singh with a "fake drug case" should he make a report against those that attacked him. *Id.*

2

A 078 155 083

Singh, Amandeep

## Conclusion

Mr. Singh was found credible. He has provided corroborating documentation for his claims of past persecution. Specifically, he has provided documentation corroborating his political affiliations and his testimony regarding the times he was violently beaten. Wherefore, Mr. Singh requests that this Court grant his application for withholding of removal (alternatively his request under the CAT) or, should the Court find additional corroborating evidence is necessary, to specify what is necessary and to provide Mr. Singh with an opportunity to present it or to explain why it is unavailable.

Respectfully Submitted,

Christopher B. McKinney
900 Westport Road, 2nd Floor
Kansas City, MO 64111
(816) 416-7021
chris@chrisbmckinney.com

*For the respondent &
appearing on behalf of:*
Samuel Ouya Maina
2140 Shattuck Ave., Ste. 1110
Berkeley, CA 94704

## PROOF OF SERVICE

On August 4, 2017 I, Christopher B. McKinney, served a copy of this Respondent's Brief and attached pages to the Office of Chief Counsel, Department of Homeland Security, 2345 Grand Blvd., Suite 500, Kansas City, MO 64108 by email.

Christopher B. McKinney

3

KAREN E. LUNDGREN                                    DETAINED
Chief Counsel
KIMBERLY A. BURGESS
Assistant Chief Counsel
Office of the Chief Counsel (Kansas City Sub-Office)
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement             
2345 Grand Blvd., Ste. 500
Kansas City, MO  64108


UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
KANSAS CITY, MISSOURI


IN THE MATTER OF:                        )
                                         )
Amandeep SINGH,                          )    FILE NO.: A 078155083
Respondent                               )
                                         )
In Removal Proceedings                   )


Immigration Judge: Glen Baker          Next Hearing: N/A (Pending Written Decision)


**DEPARTMENT'S SUBMISSION OF POSITION AND FORENSIC DOCUMENT
LAB RESULTS**

COMES NOW, the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement ("Department"), by and through Assistant Chief Counsel, Kimberly A. Burgess, and files herewith the Department's statement of position and the attached report from the Forensic Document Lab (See attached TAB A, Pages 1-3).

This case was previously reset for the Department to verify the authenticity of previously submitted evidence and for the respondent to file a brief and any other evidence. The Forensic Document Lab results are, unfortunately, inconclusive. The lack of chain of custody and unavailability of the original documents for the respondent's evidence on May 8, 2017 also brings the authenticity of those documents to question. The Department submits that these documents at pages 1-15 are not accompanied by certified translations, the Department is unable to confirm the authenticity of the letter at page 16, the note on page 17 does not contain a statement swearing the affiant to the contents, and page 18 is mostly unreadable. The Department, as of the date of this filing, has not received a brief from the respondent. The Department's position remains that the respondent is not credible and that the Court should deny the application for relief.

Respectfully Submitted on this 9th day of June 2017,

KIMBERLY A. BURGESS
Assistant Chief Counsel

2

# PROOF OF SERVICE

On, June 9, 2017, I, Kimberly A. Burgess, served a copy of this filing and any attached pages to Amandeep Singh, by and through attorney of record, by placing a true copy thereof in a sealed envelope, with postage thereon to be fully prepaid by normal government process and causing the same to be mailed by first class mail to the person at the address set forth below.

Samuel Maina
Law Offices of S. Ouya Maina
2140 Shattuck Avenue Suite 1110
Berkeley, CA 94704

Kimberly A. Burgess
Assistant Chief Counsel
Office of the Chief Counsel
Kansas City Sub-Office
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
2345 Grand Blvd., Suite 500
Kansas City, MO  64108

June 9, 2017
Date

3